Ira J. **ROJHANI** and Sherri L. Rojhani, individually and as parents and next friend of Seth Rojhani, a minor, Plaintiffs–Appellants,

v.

David **MEAGHER**, M.D., and Denver Pediatric Surgeons, P.C., Defendants–Appellees.

No. 98CA2105.

Colorado Court of Appeals, Division III.

Nov. 24, 2000.

Certiorari Denied April 30, 2001.

Leventhal & Brown, P.C., Beth L. Krulewitch, Denver, CO, for Plaintiffs–Appellants.

Long & Jaudon, P.C., Alan D. Avery, Michael J. Rosenberg, Denver, CO, for Defendants–Appellees.

Opinion by Judge ROY.

Plaintiffs, Ira J. and Sherri L. Rojhani, individually and as parents and next friend of their son, Seth Rojhani, a minor child, appeal the judgment entered on a jury verdict in favor of the defendants, David Meagher, M.D., and Denver Pediatric Surgeons, P.C. (collectively physician). We affirm.

In April 1991, when the child was six months old, he was diagnosed with a very rare form of cancer called a neuroblastoma. A team of physicians advised his parents that he needed immediate surgery to remove a tumor because it was compressing his spinal cord and filling his left thoracic cavity. The parents consented, the surgery was performed immediately, and the post-surgical prognosis was excellent.

A monitoring program was implemented which involved regularly scheduled magnetic resonance imaging tests. In September 1991, such a test revealed that the tumor had returned. The then treating physicians, including physician, advised the parents that an immediate operation was necessary, the primary concern being that the tumor was again compressing the child's spinal cord and would paralyze the child if it remained untreated. The parents were not advised of or offered any alternative treatment.

The second surgery, in which physician participated, was not successful in removing all of the tumor, and it left the child permanently paralyzed. The parents were advised that the child should have follow-up chemotherapy.

In September 1993, the parents commenced this medical malpractice action, claiming that the treating physicians at the time of the second surgery breached their duty of care by (1) insisting on performing the second surgery immediately; (2) failing fully to inform the parents of a viable alternative, namely chemotherapy; and (3) negligently performing the surgery.

Other defendants settled, and trial against physician here resulted in a verdict in their favor.

I.

Plaintiffs claim that the trial court erred when it refused to admit into evidence an unsigned draft procedure note dictated by an assisting resident physician. We conclude that any error was harmless.

Following the surgery, physician asked the assisting resident physician to prepare the procedure note. The procedure note was not completed in a timely manner, and, after several weeks, physician again requested the assisting resident physician to complete the procedure note. When physician read the draft procedure note prepared by the assisting resident physician, he found what he believed to be several errors and omissions. Physician then prepared and signed a procedure note.

The draft procedure note stated, *inter alia:* "[T]he posterior left chest wall was dissected free down to the level of the foramina and into the spinal cord." If correct, this statement would indicate that physician had cut down to the child's spinal cord, possibly causing his paralysis. Plaintiffs attempted to introduce the draft procedure note during the cross-examination of one of physician's expert witnesses. Physician's counsel objected to the admission of the draft procedure note on the grounds that it was not authenticated. The trial court refused the exhibit on those grounds.

Plaintiffs argued that there was a stipulation for the admission of the draft procedure note in the case management order which stated: "Defendant stipulates that all medical records meet the foundation requirements of Rule 803 CRE *but objects to some records on other grounds.*"

Authentication, as a condition precedent to the admissibility of documentary evidence, is satisfied by evidence sufficient to support a finding that the document in question is what its proponent claims it to be. *People v. Esch,* 786 P.2d 462 (Colo.App.1989).

One of the primary purposes of the stipulation with respect to the foundation requirements of CRE 803 is to eliminate the necessity of calling witnesses for the purpose of authenticating documents, which is frequently a timeconsuming formality. Therefore, in our view, the exhibit should have been admitted, or at least should not have been refused on the grounds that it was not authenticated.

■ However, in our view, the error was harmless. Harmless error occurs with respect to the admission or exclusion of evidence when no substantial right of a party is affected. CRE 103. A substantial right is affected if the error substantially influences the outcome of the case. *Devenyns v. Hartig,* 983 P.2d 63 (Colo.App.1998).

We conclude from our review of the record, that plaintiffs' counsel was permitted, without objection, to read the critical portions of the draft procedure note to the physician's expert witness on the standard of care and got that witness to admit, on the record and before the jury, that, if the procedure was conducted as described, the physician had provided substandard care. That expert witness indicated, however, that it was highly unlikely that the draft procedure note accurately described the procedure as dissecting "into" the spinal cord because this depth would have required special instruments to chisel through bone. It is apparent that the jury heard and considered this testimony because it was the subject of a jury question during deliberations.

Therefore, the error in excluding the draft procedure note did not, in our view, affect any substantial right of the plaintiffs.

## II.

■ Plaintiffs contend that the trial court's failure to instruct the jurors that they could consider testimony relating to the draft procedure note, while at the same time reminding them that it was the procedure note prepared and signed by physician which had been admitted, constituted reversible error. We disagree.

During deliberations, the jury sent a note to the trial court that read as follows: "The report from the [assisting surgeon] for the [second surgery], need more information [physician's] report." The trial court responded: "The operative note from the [assisting resident physician] was not admitted as an exhibit. The operative note from [physician] is Exhibit 92."

Plaintiffs objected to the court's reference to the physician's procedure note because it was beyond the scope of the jury's question. Plaintiffs argue that the court's response sent a clear message that it had determined that the assisting resident physician's draft procedure note was insignificant when compared to physician's procedure note.

Clearly, however, the physician's procedure note was not beyond the scope of the jury's question. The trial court's response concerning the physician's procedure note was accurate, responsive to the question, and in no way indicated that it should be given greater weight than the assisting resident physician's draft procedure note, or the testimony concerning it.

Therefore, we conclude that the trial court did not abuse its discretion in its response to the jury's question.

## III.

■ Plaintiffs next argue that the trial court erred when it admitted into evidence a research protocol which post-dated the child's treatment. We disagree.

During cross-examination, physician's counsel questioned one of plaintiffs' expert witnesses, who had expressed an opinion that surgery was not the preferred treatment, about a 1998 research protocol in effect at the witness' hospital which indicated that surgery was the accepted treatment at that time. Plaintiffs objected on the ground that the protocol was not endorsed, that it did not apply to treatment in 1991, and that physician had already accepted the proposition that protocols did not establish the standard of care.

Plaintiffs argue that *Bennett v. Greeley Gas Co.,* 969 P.2d 754 (Colo.App.1998) is instructive. In *Bennett,* the plaintiffs were injured in a gas explosion, which was caused by a leak in a pipeline that had been dam-

aged and negligently repaired during excavation work eighteen years earlier. To show that defendant did not meet its standard of care, the trial court allowed plaintiffs to introduce evidence of a federal safety regulation that had been enacted six years after the repair.

On appeal, a division of this court remanded the case for a new trial, stating that:

[A]t least absent evidence that a safety code or regulation was intended to apply retroactively, it has generally been held that evidence concerning them is not admissible to establish the standard of care at a time before their enactment.

*Bennett v. Greeley Gas Co., supra,* 969 P.2d at 759.

However, the *Bennett* holding is distinguishable. In *Bennett,* a later regulation was used to establish an apparently higher standard of care than was applicable during defendant's earlier repair of a pipeline. Here, the reverse is true, that is, the later protocol was being used to validate an earlier treatment decision. While it is true that the later protocol favoring surgery could have resulted from improved surgical equipment and techniques, there is no indication of that in this record.

We conclude that the trial court did not abuse its discretion in admitting the 1998 protocol.

## IV.

■ Plaintiffs next contend that the trial court erred in admitting into evidence a 1991 research protocol, since that protocol did not address how a patient with the child's presentation should be treated. Again, we perceive no abuse of discretion.

■ A trial court has considerable discretion in ruling upon the admissibility of evidence, and we will find an abuse of discretion only if its ruling is manifestly arbitrary, unreasonable, or unfair. *Tran v. Hilburn,* 948 P.2d 52 (Colo.App.1997).

The 1991 protocol was one in which the child was enrolled following his first surgery, and provided that surgery was the treatment of choice for recurrent local neuroblastoma.

Plaintiffs argue that physician was precluded from introducing the protocol because: (1) physician's earlier statement that he was unaware of any protocol applicable to the child's treatment and that if one existed it did not set the standard of care, constituted a judicial admission; and (2) it was inadmissible pursuant to CRE 403.

■■ A judicial admission is a formal, deliberate declaration that a party or his or her attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute. Judicial admissions are binding on the party who makes them, are evidence against such party, and may furnish the basis for a verdict. However, the alleged admission must also be unequivocal. *Salazar v. American Sterilizer Co.,* 5 P.3d 357 (Colo. App.2000).

Here, the physician did not unequivocally state that there was no protocol in place at the time of the child's second surgery, but rather that he had no personal knowledge of one. Further, the fact that the physician did not think that a protocol established the standard of care did not render the protocol inadmissible as evidence on the standard of care issue.

The record reflects that many of the expert witnesses testified that protocols, though not necessarily a standard of care, were the closest thing thereto in situations similar to this case. Contrary to plaintiffs' assertion, physician's statement was not a judicial admission that would preclude physician from introducing protocol into evidence.

Further, in order to enroll the child in the protocol, the plaintiffs signed a consent form that discussed chemotherapy. The protocol was relevant, therefore, as it addressed a key issue in the trial, which was whether the plaintiffs knew that chemotherapy was an alternative to surgery before the child underwent the second surgery.

We hold that the trial court did not abuse its discretion in admitting the 1991 research protocol.

## V.

▮ Plaintiffs argue that the trial court abused its discretion in refusing to allow them to use the deposition testimony of a defendant who had been dismissed as a party to the case. We disagree.

Prior to trial, plaintiffs notified physician that they intended to present portions of the depositions of two physicians who had previously been defendants to the action but had settled out. Physician filed a motion in limine seeking to preclude the use of the depositions, asserting that: (1) the transcripts had not been timely designated; (2) the former defendants were no longer parties to the action; and (3) the plaintiffs had failed to establish the unavailability of the former defendants. The trial court reserved ruling on the motion until trial.

On the third day of trial, in chambers, and with counsel for both parties present, the court addressed the motion. Counsel for the plaintiffs indicated she still wished to read from the deposition of one of the oncologists who was treating the child in the summer of 1991 prior to the second surgery. The purpose of the testimony was to establish that the parents had not been advised by the oncologist of alternative therapies prior to the second surgery.

The trial court concluded that C.R.C.P. 32(a)(2) did not apply because the oncologist was not a party at the time of trial and that the admission of the deposition would violate C.R.C.P. 32(a)(3) which permits the use of depositions in the event the deponent is, in essence, not available at trial. Plaintiffs neither made, nor attempted to make, a showing that the deponent was unavailable to testify at trial.

On appeal, the plaintiffs assert that they were entitled to introduce the deposition pursuant to C.R.C.P. 32(a) which states, in pertinent part, as follows:

At the trial . . . any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

(2) *The deposition of a party* or of any one who at the time of taking the deposition was an officer, director, or managing agent of a public or private corporation, partnership, or association, or a governmental agency, which is a party, or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf thereof *may be used by an adverse party for any purpose.* (emphasis added)

The issue presented is whether, for the purposes of C.R.C.P. 32(a)(2), the deponent need be a party at the time the deposition is taken, or at the time the deposition is offered into evidence. We conclude that it is the latter.

Neither party has provided us with authority addressing the issue. Our research indicates that, in jurisdictions which have rules similar to, or essentially identical with, C.R.C.P. 32(a)(2) and which have considered the issue, the deponent must be an adverse party to the proponent of the deposition at the time the deposition is offered into evidence.

For example, in *Skok v. City of Glendale,* 3 Ariz.App. 254, 413 P.2d 585 (1966), an issue was the authority of the deponent to act as an agent for his cotenants in executing a sewer extension agreement with the city. At the time of his deposition, the deponent, as here, was a party to the litigation but he was subsequently dismissed from the case. At trial, the trial court admitted the deposition into evidence at the request of the city to establish the agency of the deponent.

The appellate court reversed a judgment in favor of the city, holding that the admissibility and use of a deposition of a deponent who was a party at the time the deposition was taken is to be determined by the facts as they appear at the time the deposition is offered into evidence, and not necessarily as they existed at the time the deposition was taken. The appellate court concluded that the deponent was neither a party nor was he adverse to the interests of the city at the time of trial. *See also Soper v. Bopp,* 990 S.W.2d 147 (Mo.Dist.Ct.App.1999); *Nedball*

*v. Tellefsen,* 102 Misc.2d 589, 424 N.Y.S.2d 93 (Sup.Ct.1980); *but see Iheme v. Simmons,* 148 Misc.2d 223, 560 N.Y.S.2d 167 (Civ.Ct. 1990).

This conclusion is supported by the language of the rule. The rule, in essence, states that the deposition of a party who is a natural person, or a person who was at the time of the deposition testifying as an agent or representative of an entity *which is a party,* may be used by an adverse party for any purpose. The rule speaks in the present tense as to both circumstances, but recognizes the status of a deponent as to an entity may change between the deposition and trial.

Therefore, we conclude that the trial court did not err in refusing to admit the deposition of the oncologist.

Plaintiffs' final argument addresses matters that might arise on retrial, and, as we have concluded that a new trial is not necessary, we decline to address it.

Judgment affirmed.

NEY and KAPELKE, JJ., concur.