**CHERRY CREEK GUN CLUB, INC., Petitioner–Appellant,**

v.

**Mary A. HUDDLESTON, in her official capacity as Property Tax Administrator of the State of Colorado, Respondent–Appellee,**

**and**

**Board of Assessment Appeals, Appellee.**

No. 04CA1009.

Colorado Court of Appeals, Division A.

July 14, 2005.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2004.

Thomas N. Scheffel & Associates, P.C., Thomas N. Scheffel, Joseph A. Weber, Denver, Colorado; Robert A. Lees & Associates, Robert A. Lees, Castle Rock, Colorado, for Petitioner–Appellant.

John W. Suthers, Attorney General, Larry A. Williams, Assistant Attorney General, Denver, Colorado, for Respondent–Appellee.

Opinion by: Chief Judge DAVIDSON.

In this property tax action, petitioner, Cherry Creek Gun Club, Inc. (club), appeals from an order of the Board of Assessment Appeals (BAA) which affirmed the ruling of the Division of Property Taxation that the club was not entitled to an exemption from ad valorem taxation for its nonresidential property. The issue in this appeal is whether the club is entitled to the charitable use tax exemption available to "qualified amateur sports organizations," pursuant to § 39–3–108(1.3), C.R.S.2004. We conclude it is not, and, therefore, we affirm.

Pursuant to § 39–3–108(1), C.R.S.2004, nonresidential property, which is owned and used solely and exclusively for "strictly charitable purposes," is exempt from the levy and collection of property tax. Subsection (1.3) of the statute provides that "[n]onresidential property that is owned and used solely and exclusively by a qualified amateur sports organization shall be presumed to be owned and used solely and exclusively for strictly charitable purposes." That subsection further states, in pertinent part:

> For purposes of this subsection (1.3), the term "qualified amateur sports organization" means any organization organized and operated exclusively to foster local, statewide, national, or international amateur sports competition if such organization is also organized and operated primarily to support and develop amateur athletes for national or international competition in sports; except that no part of the net earnings of such organization inure to the benefit of any private shareholder or individual.

Section 39–3–108(1.3).

In 1992, the club was granted an exemption under § 39–3–108(1) on the basis that the property was used for a strictly charitable purpose. In 2001, in its application for exemption for an adjacent property, the club did not seek exemption under § 39–3–108(1), but instead sought exemption on the basis that it was a "qualified amateur sports organization" under § 39–3–108(1.3). After a hearing, the property tax administrator determined the club was not a "qualified amateur sports organization," denied the requested exemption, and revoked the club's existing exemption.

On review, the BAA upheld the Division's decision. In its ruling, the BAA determined the club was used primarily for the recreational enjoyment of its members. While agreeing that club programs offered all levels of competition, the BAA found the relatively small number of members who participated in these competitive events indicated that the club was not "organized and operated exclusively to foster local, statewide, national, or international sports competition." The BAA also determined the evidence did not support the finding that the club was "organized and operated primarily to support and develop amateur athletes."

On appeal, the club contends, inter alia, that the BAA's determination that the club's primary purpose was recreational enjoyment, not fostering competitive shooting, was erroneous. The club points to its articles of incorporation, which include as an objective of the club the promotion of "the recreational aspect of small arms firing through the conduct of small arms competitions." The club also notes that, during the relevant time period, it operated programs designed to prepare members for amateur shooting competitions; hosted competitive events on a recurring basis; hosted a competitive Monday night league; had members compete in regional competition; had an informal Boy Scout program which instructed young people in shooting sports and competition; had a

junior program that trained participants for competition; had participants who competed in national shooting events, including the Junior Olympic Rifle Competition; and had approximately 150 of its approximately 500 members involved in competition.

On reasoning somewhat different from that set forth by the BAA, we disagree with the club that the rejection of its exemption request was erroneous. We conclude that the club did not qualify for a tax exemption pursuant to § 39–3–108(1.3) because it did not meet the threshold requirement that it be "organized exclusively" to foster amateur sports competition. Further, because this conclusion is dispositive, we need not address the other grounds on which the BAA based its determination.

## I. Standard of Review

The ultimate determination of whether an entity is a "qualified amateur sports organization" for purposes of qualifying for a property tax exemption is a mixed question of law and fact. *See Bd. of Assessment Appeals v. AM/FM Int'l*, 940 P.2d 338, 343 (Colo.1997). The BAA's classification must be sustained if it has a reasonable basis in law and is supported by substantial evidence in the record as a whole. *See Home Depot USA, Inc. v. Pueblo County Bd. of Comm'rs*, 50 P.3d 916 (Colo.App.2002); *see also* § 24–4–106(7), C.R.S.2004; *Bd. of Assessment Appeals v. AM/FM Int'l, supra*, 940 P.2d at 343.

In construing a statute, we adopt the construction that best gives effect to the intent of the legislature. *See Slack v. Farmers Ins. Exch.*, 5 P.3d 280, 284 (Colo.2000). In doing so, we first look at the plain and ordinary meaning of the statutory text. *See People v. Davis*, 794 P.2d 159, 180 (Colo. 1990). In addition, tax exemption statutes are generally strictly construed against exemption. *See United Presbyterian Ass'n v. Bd. of County Comm'rs*, 167 Colo. 485, 496, 448 P.2d 967, 972–73 (1968).

## II. Interpretation of § 39–3–108(1.3)

Pursuant to § 39–3–108(1.3), a "qualified amateur sports organization" must satisfy two related but independent criteria. It must be "organized and operated exclusively to foster local, statewide, national, or international amateur sports competition." If that requirement is satisfied, the organization also must be "organized and operated primarily to support and develop amateur athletes for national or international competition in sports." Thus, the first requirement is a necessary, but not sufficient, criterion to qualify an entity as a "qualified amateur sports organization."

Within the first requirement, the statute sets forth two separate components. First, the entity must be "organized exclusively" to foster amateur sports competition. In addition, the entity must be "operated exclusively" to foster amateur sports competition. Because we conclude that the first component was not satisfied, we need not address the second.

No Colorado appellate court has specifically addressed the meaning of the words "organized" and "exclusively" for purposes of § 39–3–108(1.3). However, the phrase "organized and operated exclusively" appears in many different sections of the Internal Revenue Code that grant exemption from taxation, including 26 U.S.C. § 501(j). Section 39–3–108(1.3) is modeled on § 501(j), which also provides a tax exemption for "qualified amateur sports organizations." Section 501(j) defines that phrase as "any organization organized and operated exclusively to foster national or international amateur sports competition if such organization is also organized and operated primarily to conduct national or international competition in sports or to support and develop amateur athletes for national or international competition in sports." 26 U.S.C. § 501(j)(2). Federal interpretation of the words "organized" and "exclusively," in this particular context, is instructive. *See Furlong v. Gardner*, 956 P.2d 545, 551–52 (Colo.1998) (seeking guidance in interpreting Colorado statute by turning to federal precedent interpreting analogous federal statute).

## A. Meaning of "organized"

Under the relevant provisions of the federal tax code concerning exemption from taxa-

tion, "organized" generally refers to the written instrument by which the organization was created, such as the articles of incorporation. *See, e.g., Nationalist Movement v. Comm'r of Internal Revenue,* 37 F.3d 216, 219 (5th Cir.1994); *Dumaine Farms v. Comm'r of Internal Revenue,* 73 T.C. 650, 660, 1980 WL 4510 (1980); 9 J. Mertens, Jr., *Mertens Law of Fed Income Tax* § 34.09, at 37 (1990).

■ The purpose of an organization is usually evidenced by the corporate charter, which must "limit its purposes to exempt ones and not expressly empower it to engage, except insubstantially, in activities which do not further an exempt purpose." *Retired Teachers Legal Defense Fund, Inc. v. Comm'r of Internal Revenue,* 78 T.C. 280, 289, 1982 WL 11193 (1982); *see also Church of Nature in Man v. Comm'r of Internal Revenue,* 49 T.C.M. 1393(CCH) (1985); 9 Mertens, *supra,* § 34.09, at 37 (the "articles of incorporation must limit the purposes of the organization to exempt purposes"); 3 *RIA's Analysis of Federal Taxes* § D–4106, at 19,226A (2004) ("An organization's articles may not expressly empower it to carry on, otherwise than as an insubstantial part of its activities, activities which aren't in furtherance of one or more exempt purposes."); 698 *Tax Management* A–93 (2005) ("If the articles of organization contain improper provisions, the organization's actual operations cannot cure such deficiencies.").

Consequently, most of the evidence at the hearing relied upon by the club here, including evidence of the club's competitions and training programs, although important to the question of the club's operations, is not relevant to its organization.

### B. *Meaning of "exclusively"*

■ Like the word "organized," the word "exclusively" also has a particular meaning when used in the phrase "organized and operated exclusively" for purposes of the federal tax code. Although "exclusively" typically is defined as "with the exclusion of all others," *see, e.g., Cache La Poudre Reservoir Co. v. Indus. Claim Appeals Office,* 757 P.2d 173, 174–75 (Colo.App.1988), in the context of federal taxation exemptions, "exclusively" includes incidental nonexempt purposes. *See Fund for Study of Econ. Growth & Tax Reform v. Internal Revenue Serv.,* 997 F.Supp. 15, 19 (D.D.C.1998) ("[i]t is settled law that an 'incidental non-exempt purpose will not disqualify an organization, but a single substantial non-exempt purpose or activity will destroy the exemption, regardless of the number or quality of exempt purposes,'" quoting *Airlie Found., Inc. v. United States,* 826 F.Supp. 537, 548 (D.D.C.1993)), *aff'd,* 161 F.3d 755 (D.C.Cir.1998); *see also Better Bus. Bureau v. United States,* 326 U.S. 279, 283, 66 S.Ct. 112, 90 L.Ed. 67 (1945); *Manning Ass'n v. Comm'r of Internal Revenue,* 93 T.C. 596, 603–04, 1989 WL 136299 (1989).

### III. *Discussion: The club is not "organized exclusively" to foster amateur sports competition*

Applying these definitions to determine whether the club is "organized exclusively" to foster amateur sports competition, we will assume, as the club contends, that in the context of § 39–3–108(1.3), "fostering" amateur sports competition may be accomplished by a variety of services, some of which may be ancillary to the primary needs of the athlete, such as the provision of insurance or medical care. We also will assume, arguendo, that many of the club's activities support the type of "amateur athlete" that § 39–3–108(1.3) was intended to benefit.

■ The club's articles of incorporation, however, plainly demonstrate that, of the club's several purposes, none clearly fosters competitive shooting, and some explicitly do not. Thus, even assuming the broadest interpretation of the terms "foster," and "amateur athletics," as the club argues, we nonetheless conclude that the club was not "organized exclusively" to foster amateur sports competition.

Specifically, contrary to the club's assertion, we find no support in the articles' provision which states that the club was formed "to promote the recreational aspect of small arms firing through the conduct of small arms competitions." To the contrary, this provision states that the club provides shooting competitions in furtherance of the recre-

ational aspect of small arms firing, not the other way around. Hence, according to the articles of incorporation, promotion of the growth and development of sports competition is merely a means to otherwise enhance a purpose of the club, the recreational use of small arms.

Furthermore, by the wording of this same provision—"to promote the recreational aspect of small arms firing"—the articles indicate that promotion of the recreational use of small arms is a primary, not an incidental activity. Thus, even if we were to read the provision conjunctively, that is, to promote recreational small arms firing *and* to promote competition, it reveals that the club is not organized *exclusively* to foster competitive shooting. *See Fund for Study of Econ. Growth & Tax Reform v. Internal Revenue Serv., supra.*

Similarly, two other purposes set forth in the articles, "to properly train members and citizens ... in the firing of small arms" and "to promote the educational aspect of small arms firing through programs designed to better acquaint the members [and citizens] with the safe use and care of firearms," show shooting competition as not a purpose of the club but only a means to achieve the safer handling of small arms.

The remaining purposes set forth in the articles of incorporation have an even more attenuated relationship to athletic competition. These provisions state that the club was formed for the purposes of "advocat[ing] and work[ing] for the passage of laws in keeping with our constitutional guarantee of the right to keep and bear arms" and "advocat[ing] and work[ing] for conservation legislation to insure the benefits of our natural resources for future generations." Although the promotion of such legislation may promote the use of guns or result in more pristine areas in which to shoot, those purposes have little to do with shooting competition.

The conclusion that the club is not "organized exclusively" to foster competitive

shooting also finds support in its bylaws. *See Colo. State Chiropractic Soc. v. Comm'r of Internal Revenue*, 93 T.C. 487, 496, 1989 WL 123034 (1989) (looking to bylaws, together with articles of incorporation, to determine whether group was "organized exclusively" for a certain purpose).

The bylaws, which are plain and unambiguous, state, in pertinent part, that the club's objectives are: "to promote social welfare and public defense, safety, law and order, and the National Defense"; "to educate and train citizens of good repute in the safe and efficient handling of small arms"; "to promote the efficiency in the use of small arms on the part of members of law enforcement agencies, the Armed Forces, and of citizens who would be subject to military service in the event of armed conflict"; and to "encourage in general the lawful ownership and use of small arms by citizens of good repute." Nothing in these objectives reflects that the club's purpose is to foster amateur athletic competition.

We conclude that the articles of incorporation and bylaws establish that the club was not "organized exclusively" to foster amateur sports competition. Thus, we further conclude that the BAA properly denied the club's request for a tax exemption. Based on this disposition, we need not address the other arguments raised by the club, including its contention that the BAA erroneously read the statute to require a "predominant percentage of [its] members [to be] amateur athletes or active officials."

The order is affirmed.

Justice KIRSHBAUM * and Judge NEY * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2004.