**E–470 PUBLIC HIGHWAY AUTHORITY,**
Plaintiff–Appellee,

v.

**KORTUM INVESTMENT COMPANY,**
**LLLP and Patricia A. Castrodale,**
Defendants–Appellants.

No. 04CA1262.

Colorado Court of Appeals,
Div. V.

Aug. 11, 2005.

Duncan, Ostrander & Dingess, P.C., Robert R. Duncan, Donald M. Ostrander, James Birch, T. Daniel Platt, Denver, Colorado, for Plaintiff–Appellee.

Opperman & Schell, P.C., William M. Schell, Julie A. Rech, Denver, Colorado, for Defendants–Appellants.

DAILEY, J.

In this eminent domain proceeding, respondents, Kortum Investment Company, LLLP and Patricia A. Castrodale (landowners), appeal the trial court's order awarding them only part of the attorney fees they requested from petitioner, E–470 Public Highway Authority (E–470). The issue on appeal is whether landowners were entitled, under § 43–4–506(1)(h)(II)(B), C.R.S.2004, to attorney fees incurred after they rejected a written offer that was tendered by E–470 following the commencement of condemnation proceedings. Because we conclude that they were so entitled, we vacate the trial court's order and remand with directions.

Section 43–4–506(1)(h)(II)(B) states, in pertinent part:

In connection with proceedings for the authority's acquisition or condemnation of property … the court shall award the owner all of such owner's reasonable attorney fees … where the award by the court in such proceedings equals or exceeds one hundred thirty percent of the last written offer given to the property owner prior to the filing of the condemnation action.

In this case, E–470 sought to acquire rights in 19.8121 acres of landowners' property for use in connection with the E–470 public highway project.

Initially, E–470 sought fee title to 14.156 of the acres and only a permanent multi-use easement with respect to the remaining 5.6561 acres. Based on its appraisal of fee property at $5,000 per acre and easement property at $2,500 per acre, E–470 calculated the property's value to be $84,920. E–470 tendered to landowners a final written offer 20% higher than that amount, equaling $101,880, which landowners rejected. E–470 then filed its petition for condemnation.

Among other things, landowners claimed that E–470's multi-use easement (for such things as drainage sloping, ditches, oil and gas facilities, access for reasons deemed necessary by E–470, and a public trail of paved asphalt for pedestrians, bicycle, horses, and other unmotorized transportation) of the 5.6561 acres was so inclusive as to constitute, in reality, a fee taking. Eventually, landowners gave E–470 their appraisal valuing the property at $342,200, or $16,900 per acre.

During negotiations and after receiving landowners' appraisal, E–470 offered to purchase the entire property in fee, first for $217,943, then for $257,557. Landowners rejected both offers.

A month and a half before trial, E–470 moved and was permitted to amend its petition to acquire the entire property in fee. This amendment was made with landowners' consent and "[i]n response to [landowners] concerns regarding the all-inclusive nature of the multi-use easement." Three days after filing its amended petition, E–470 tendered to landowners a "new last written offer" of $237,745 for the property.

The landowners rejected E–470's "new last written offer", following a trial, the property was determined to be worth $247,653.

Landowners requested an award of all fees incurred in connection with the condemnation proceedings, totaling $72,360.25. They based their request upon § 43–4–506(1)(h)(II)(B), because the property's value exceeded 130% of the last written offer tendered before E–470 filed its petition for condemnation (that is, the offer for $101,880). E–470, however, asserted that landowners were not entitled to any fees, inasmuch as the value of the property did not equal or exceed 130% of the new last written offer tendered after the filing of the amended petition in condemnation (that is, the offer for $237,745).

The trial court awarded landowners attorney fees incurred prior to E–470's new last written offer, amounting to $33,009. But relying on *E–470 Public Highway Authority v. Wagner,* 77 P.3d 902 (Colo.App.2003)(*Wagner*), the court refused to award them any fees incurred after that offer.

On appeal, landowners contend that the trial court misapplied the plain language of the statute. We agree.

### I. *Standard of Review*

■ The interpretation of a statute is a question of law. *See Yacht Club II Homeowners Ass'n v. A.C. Excavating,* 94 P.3d 1177, 1179 (Colo.App.2003), *aff'd,* 114 P.3d 862 (Colo.2005). In construing a statute, we adopt the construction that best gives effect to the intent of the legislature. *Cherry Creek Gun Club, Inc. v. Huddleston,* 119 P.3d 592, 2005 WL 1645789 (Colo.App. No. 04CA1009, July 14, 2005).

■ In ascertaining legislative intent, we look first to the language employed in the statute. *In re Marriage of Dale,* 87 P.3d 219, 223 (Colo.App.2003). We give effect to every word and do not adopt a construction that renders any term superfluous. *Slack v. Farmers Ins. Exch.,* 5 P.3d 280, 284 (Colo. 2000); *see Hendricks v. People,* 10 P.3d 1231, 1238 (Colo.2000)(quoting *City & County of Denver v. Gallegos,* 916 P.2d 509, 512 (Colo. 1996): "The legislative choice of language may be concluded to be a deliberate one calculated to obtain the result dictated by the plain meaning of the words."). Thus, we do not read into a statute an exception that its plain language does not suggest, warrant, or mandate. *Town of Telluride v. Lot Thirty–Four Venture, L.L.C.,* 3 P.3d 30, 35 (Colo. 2000).

■ If the meaning of a statute is clear and unambiguous, we apply the statute as written, *see Slack v. Farmers Ins. Exch., supra,* unless to do so would lead to an absurd result. *Showpiece Homes Corp. v. Assurance Co.,* 38 P.3d 47, 51 (Colo.2001).

### II. *Interpretation of § 43–4–506(1)(h)(II)(B)*

■ Section 43–4–506(1)(h)(II)(B) requires an award of all the landowner's reasonable attorney fees when the "final value of the property as determined by the court ... equals or exceeds one hundred thirty percent *of the last written offer given* to the property owner *prior to the filing of the condemnation action*" (emphasis added).

E–470 argues that, under the statute as interpreted in *Wagner,* it was entitled to present a new last written offer in connection with the filing of its amended petition and thus, the pertinent offer in this case was the one for $237,745. We are not persuaded.

The statute mandates that, in assessing a landowner's right to attorney fees, a court looks only to the last written offer "prior to the filing" of "the condemnation action."

As used in this context, the common and ordinary meaning of the term "action"is "lawsuit." *See In re CGE Shattuck LLC,* 272 B.R. 514, 518 (Bankr.D.N.H.2001). When this meaning is applied to § 43–4–506(1)(h)(II)(B), it becomes clear that the offer must be given before the initiation of the condemnation lawsuit. Because the filing of an amended petition does not result in the filing of a new or different "action"or "lawsuit" (but only in the broadening or narrowing of an existing "action"or "lawsuit"), offers based upon an amended petition do not qualify under the statute as being "prior to the filing of the condemnation action."

Had the General Assembly intended otherwise, it could have used language to that effect. *Cf.* § 13–17–202(1), C.R.S.2004 (tying cost awards to a party's acceptance or rejection of a settlement offer made "at any time

more than fourteen days before the commencement of the trial"); § 38–1–121(6), C.R.S.2004 (requiring condemning authority, where negotiations have failed to reach agreement on fair market value of property, to furnish "a written final offer"to landowners "prior to proceeding to trial on the issue of valuation"); *Pueblo Bancorporation v. Lindoe, Inc.*, 63 P.3d 353, 360 (Colo.2003)(legislature's use of term "fair value" rather than "fair market value" intentional, in light of use of term "fair market value" in other places). But by explicitly linking the fees award to the time when the condemnation action was initiated, the General Assembly provided the parties (and particularly condemning authorities) an incentive for settling disputes before litigation ever begins. *See Rath v. Haycock*, 137 Or. App. 456, 905 P.2d 854, 858 (1995)(construing phrase "commencement of the action" in attorney fees statute, designed to encourage settlements, as referencing only filing of initial complaint and not amended complaint).

Nor does the decision of another division of this court in *Wagner* compel a different result.

In *Wagner*, the condemning authority filed a condemnation action initially seeking to obtain 39 acres of private property for public use. Two months before trial, the condemning authority amended its petition to decrease the amount of property sought to 29 acres. The condemning authority argued that it could not be held responsible for attorney fees, because the final award did not exceed by 130% the last written offer made before litigation began based on 39 acres. *See Wagner, supra*, 77 P.3d at 904.

A division of this court disagreed, concluding that, under the circumstances, the trial court had correctly applied the statute by prorating the "last written offer" down to the smaller parcel of property and then determining whether fees were warranted under the prorated offer. *Wagner, supra*, 77 P.3d at 904–05.

In rendering its decision, the *Wagner* division twice noted that the condemning authority had made no new last written offer based on its changes to the amount of land sought. Yet, contrary to E–470's contention, the

*Wagner* division neither held nor implied that a condemning authority had a duty to tender a new last written offer. To so interpret *Wagner* would do violence to the division's decision, which explicitly stated, "In light of our disposition, we need not address [the condemning authority's] remaining contention[ ] that the trial court erred in imposing on [it] a duty to make an amended offer." *Wagner, supra*, 77 P.3d at 905.

We likewise need not determine here whether a "new last written offer" is either required or permitted when the condemning authority amends its petition in such a substantial manner as to warrant a conclusion that a taking of an essentially new or different character is at issue. Unlike in *Wagner*, the original and amended petitions here concerned the same amount of property. And, although the property interest here was facially changed by the amendment, the underlying use did not change when compared to the initial use as originally sought.

Thus, in this case, the last written offer before condemnation proceedings began, for $101,880, constitutes the standard against which entitlement to attorney fees under the statute must be measured. Prorating that offer, based upon the changed property interest sought by E–470 (i.e., from easement to fee for 5.6561 of the acres), its changed property value (from $2,500 per acre to $5,000 per acre), and use of the same 20% upward adjustment, produces a figure of $118,873, *see Wagner, supra*, 77 P.3d at 904; because this amount is less than half of the ultimate award, landowners are entitled to all of their reasonable attorney fees under § 43–4–506(1)(h)(II)(B).

### III. Reasonableness of Fees

We also reject E–470's alternative argument that the trial court's ruling is supportable as a determination that the fees incurred following landowners' rejections of the other offers were unreasonable.

We recognize that a party is allowed to defend a court's decision on any ground supported in the record. *Serna v. Kingston Enters.*, 72 P.3d 376, 380 (Colo.App.2002). However, to the extent E–470 argues that

landowners' requested fees were unreasonable as a matter of law, we reject that argument as inconsistent with the language of § 43–4–506(1)(h)(II)(B) and as undercutting the evident purpose of the statute, namely, to provide condemning authorities an incentive to make more realistic offers up front to landowners. To the extent E–470 argues the court made a factual finding that the requested amount was unreasonable, we discern no such finding from the court's order, and therefore cannot affirm on that basis.

Accordingly, we conclude that landowners are also entitled to their reasonable attorney fees incurred subsequent to E–470's "new last written offer,"and the trial court erred in declining to award these fees. Consequently, the matter must be remanded for the trial court to determine the amount of these fees.

Further, landowners request and are entitled to an award of attorney fees incurred in this appeal under § 43–4–506(1)(h)(II)(B), as well as costs pursuant to C.A.R. 39(a). Accordingly, on remand, the trial court shall also determine and award to landowners their reasonable attorney fees and costs incurred on appeal. *See* C.A.R. 39(a), 39.5.

The order is vacated, and the case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

Chief Judge DAVIDSON and Judge STERNBERG* concur.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2004.