SCHOOL DISTRICT NO. 12, Adams County, Colorado, a Colorado quasi-municipal corporation, n/k/a Adams 12 Five Star Schools, a Colorado quasi-municipal corporation, Plaintiff–Appellant and Cross–Appellee,

v.

SECURITY LIFE OF DENVER INSURANCE COMPANY, a Colorado corporation, successor by name change to Security Life and Accident Company, Defendant–Appellee and Cross–Appellant.

No. 05CA0849.

Colorado Court of Appeals,
Div. V.

Jan. 25, 2007.

As Modified on Denial of Rehearing
March 29, 2007.

Certiorari Granted Sept. 11, 2007.

Grimshaw & Harring, P.C., Wayne B. Schroeder, Jody Harper Alderman, Carrie S. Bernstein, Denver, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Darrell G. Waas, James T. Johnson, Denver, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge HAWTHORNE.

In this eminent domain case, School District No. 12, Adams County, appeals the judgment of the trial court awarding Security Life of Denver Insurance Co. $9,274,520 along with attorney fees and costs. On cross-appeal, Security challenges certain evi-

dentiary rulings. We affirm in part, reverse in part, vacate in part, and remand for proceedings consistent with this opinion.

## I. Background

In 2004, School District filed a petition to condemn a sixty-acre parcel (Parcel A) owned by Security, so that it could build a school. School District requested, and the court granted, immediate possession of Parcel A. Prior to filing its petition, School District gave Security a last written offer of $3,250,000. School District later amended its petition to include an adjacent seventy-eight-acre parcel (Parcel B) also owned by Security. School District did not take immediate possession of Parcel B. Prior to filing its amended petition, School District gave Security a last written offer of $6,564,492 for both parcels.

The case went to trial before a jury to determine the just compensation due Security. Because School District was unsure whether it could afford Parcel B, the parties and the court agreed that the jury would determine the market value of Parcel A, damages to Parcel B attributable to the condemnation of Parcel A, and the market value of Parcel B. The jury returned a verdict form valuing Parcel A at $5,619,240; awarding damages to Parcel B, if not taken, of $2,000,000; and valuing Parcel B, if taken, at $1,655,280.

Shortly after the trial, Security moved for confirmation of the judgment, or, in the alternative for entry of judgment notwithstanding the verdict or a new trial on all or some issues. Security argued that the jury intended to award both damages to Parcel B and Parcel B's fair market value in the event that School District condemned Parcel B, and that the court should confirm the verdict and award Security $5,619,240 for Parcel A and $3,655,280 for Parcel B, for a total compensation award of $9,274,520. The court denied Security's request for a new trial or judgment notwithstanding the verdict, but granted Security's motion to confirm the judgment, and awarded Security a total of $9,274,520 and attorney fees.

Also following trial, School District decided to proceed with the condemnation of Parcel B. On March 7, 2005, the court issued a rule and order awarding title to Parcels A and B to School District.

This appeal followed.

## II. Confirmation of the Jury Verdict

School District contends that the trial court erred in confirming the jury's verdict to reflect a total award of $9,274,520. We agree.

When a case is tried to a jury, the trial court may modify or amend the form of the jury's verdict to correct a technical error so long as the court does not disturb the jury's underlying determination. *Anstine v. Alexander*, 128 P.3d 249, 256 (Colo.App. 2005)(*cert. granted* Feb. 21, 2006, 2006 WL 390192); *Dysart Assocs. Architecture & Constr., Inc. v. Hoeltgen*, 728 P.2d 756, 758 (Colo.App.1986). Thus, a court may modify a verdict to correct a jury award when the amount is liquidated or undisputed and the jury erroneously enters the wrong amount. *Dysart, supra.*

However, a court cannot amend a verdict to resolve an ambiguity in a manner that changes the "jury's underlying intent." Such a change is one of substance. *Dysart, supra,* 728 P.2d at 758; *see Anstine, supra.*

"[W]here the inconsistency of a verdict demonstrates the fact that the jury did not understand the directions, was misled, or ignored certain instructions, any change in the verdict made by the court is a change of substance and not of form." *Weeks v. Churchill*, 44 Colo.App. 520, 521, 615 P.2d 74, 75 (1980). If the inconsistency in the verdict can be resolved based upon the instructions given the jury, without violating its underlying intent, such a change is one of form that can be made by the court. *Weeks, supra.*

Here, the jury was instructed to determine the damages to the residue of property "not taken." Instruction 11 stated that "[t]he petitioner may decide to acquire Parcel B, in which case, there will be no residue," and that "[a]ny finding of damages to the residue shall not affect your determination of the value of the property actually taken." The

jury was also instructed to calculate damages by deducting the market value of Parcel B after the condemnation of Parcel A from the market value of Parcel B before the condemnation of Parcel A.

From the verdict form here, it appears that the jury's calculation of damages to, and the value of, Parcel B was a mistake, error, or misapplication of the instructions because the damage award exceeded the value of Parcel B. Such a result is not possible under the instructions because they provide a method of calculation that would necessarily result in the reasonable market value of Parcel B exceeding the amount of damage caused by condemnation of Parcel A. Thus, the trial court's amendment was a change of substance. *See Weeks, supra.*

In addition, the trial court's resolution of the inconsistent verdict was a change of substance because it conflicted with Instruction 11, which provided that if School District condemned Parcel B, there would be no residue. It follows from this instruction that there would be no damage award if there were no residue. By adding the jury's damage award to the value of Parcel B, and awarding the sum to Security, the trial court acted in a manner inconsistent with the jury instructions, and made a change of substance. *See Burgess v. Mid–Century Ins. Co.,* 841 P.2d 325, 331–32 (Colo.App.1992) (amendments to the form of the verdict must be based upon the jury instructions).

The trial court based its interpretation of the jury's verdict on the different dates of condemnation for Parcel A and Parcel B. Because of those different valuation dates, the court found that the jury intended to award the value of Parcel A along with resulting damages to Parcel B as of February 19, 2004, and the value of Parcel B as of February 7, 2005. Although this interpretation may be reasonable and consistent with Instructions 2, 8, and 9, it is inconsistent with Instruction 11 and the verdict form because the jury was not instructed that it could award damages to Security for the time period between February 19, 2004 and February 7, 2005. Instruction 11 and the verdict form indicate that if School District condemned Parcel B, there would be no damage award

for Parcel B. Nor did the jury verdict form contain a space where the jury could record its finding of damages to Parcel B for the period of time between February 19, 2004 and February 7, 2005.

Finally, the trial court's amendment of the jury verdict was a change of substance because the parties disputed both the amount of damages to Parcel B, if not condemned, and just compensation for Parcel B, if condemned. *See Dysart, supra* (trial court lacked authority to amend jury verdict by specifying the amount of attorney fees, where the jury did not specify that amount, and where amount and reasonableness of fees were disputed); *see also Harrison Constr. Co. v. Nissen,* 119 Colo. 42, 199 P.2d 886 (1948) (error to modify jury verdict where jury misapplied a jury instruction and the amount of damages was disputed).

Because the trial court's judgment made a change of substance to the jury's verdict, the portion of the judgment awarding the damages to, and the value of, Parcel B must be reversed, and on remand, the court shall conduct a new trial on those issues. *See Dysart, supra* (new trial proper where relief requested could be considered a motion for a new trial, and where trial court improperly made a change of substance to verdict).

By the court's rule and order, School District was granted title to Parcel B on March 7, 2005. Therefore, the new trial shall determine (1) the amount of damages, if any, to Parcel B between February 19, 2004 and March 7, 2005; and (2) pursuant to § 38–1–114(1), C.R.S.2006, the true and actual value of Parcel B on March 7, 2005.

However, we affirm the portion of the trial court's judgment confirming the jury's award of $5,619,240 as the value of Parcel A. Because we conclude that the values of Parcel A and B may be determined separately, and because retrial as to Parcel B alone would not be unfair to either party, we need not remand for a new trial on all issues. *See Gerrity Oil & Gas Corp. v. Magness,* 946 P.2d 913, 934 (Colo. 1997); *Kitto v. Gilbert,* 39 Colo.App. 374, 386–387, 570 P.2d 544, 553 (Colo.App. 1977).

### III. Comparable Commercial and Retail Sales

School District contends that the trial court abused its discretion in admitting Security's evidence of comparable sales. We disagree.

The determination of whether properties are sufficiently similar to permit evidence of their value to be considered by the jury rests with the trial court. *Wassenich v. City & County of Denver*, 67 Colo. 456, 464, 186 P. 533, 536 (1919). We review a trial court's determination of the admissibility of evidence for abuse of discretion, and we will not interfere with that determination unless it is manifestly arbitrary, unreasonable, or unfair. *Wark v. McClellan*, 68 P.3d 574, 578 (Colo.App.2003).

In a condemnation proceeding, the rules regarding the admissibility of evidence related to property value are expansive, not restrictive. *City of Westminster v. Jefferson Ctr. Assocs.*, 958 P.2d 495, 498 (Colo.App. 1997). "[E]vidence of sales of comparable properties is admissible to assist the commission in determining fair market value, but the properties must be sufficiently similar to have some bearing on the value of the property under consideration." *City of Westminster, supra*, 958 P.2d at 497. No "general rule" establishes "the degree of similarity that must exist to make such evidence admissible." *Wassenich, supra*, 67 Colo. at 464, 186 P. at 536. "The root consideration is whether the comparable sale was sufficiently 'similar,' in one or more aspects, to be probative of the fair market value of the property under consideration...." *Goldstein v. Denver Urban Renewal Auth.*, 192 Colo. 422, 426, 560 P.2d 80, 84 (1977). Factors to consider in determining whether a sale is similar include "the location, the proximity in time of the sale, and the character of the property and the circumstances of the case." 5 Julius L. Sackman, *Nichols on Eminent Domain* § 21.02[1][a], at 21–44 (3d ed.2006).

Here, each of the comparable sales utilized by Security's expert was similar to Parcels A and B in at least one aspect:

- Sale 1 involved a property of seventy acres, with similar business park zoning, located a half mile from Parcels A and B.
- Sale 2 involved a 116–acre parcel, zoned as a business park, located five miles from Parcels A and B.
- The properties in sales 3, 4, and 5 were all located near Parcels A and B, were sold in 2003 and 2004, and were zoned for retail uses.
- Sale 6 involved a property that was not located near Parcels A or B, but was designated a mixed-use site, and was a sale of over 270 acres.
- Sale 7 involved a 112–acre property sold in November 2001, and it was located near Parcels A and B.
- The property in sale 8 was very close to Parcels A and B, was zoned for retail uses, and was "about 42 acres." Security's expert admitted that it was "not the best sale," but included it because of its proximity to Parcels A and B.

Because each of these sales was similar in at least one aspect to Parcels A and B, the trial court did not abuse its discretion in admitting them and allowing the jury to determine the weight to accord them in determining the value of Parcels A and B. *See Goldstein, supra; Wassenich, supra*, 67 Colo. at 464, 186 P. at 536 (court does not err in admitting sales of properties "situated in the same general section" that are the "same kind of property," and have the same "general features and characteristics," even if those properties have "many differences"); 5 Sackman, *supra*, § 21.02[1][a], at 21–52 ("It is within the discretion of the trial court to allow the jury to determine for itself whether the described properties were in fact comparable to the condemned tract, and if found comparable, to determine what weight should be given thereto.").

In addition, the dissimilarities between the comparable sales relied upon by Security's expert and Parcels A and B do not make his testimony inadmissible; those dissimilarities go to the weight, not the admissibility, of his testimony. 5 Sackman, *supra*, § 21.02[1][a], at 21–52.

School District's reliance upon *Fowler Irrevocable Trust 1992–1 v. City of Boulder*, 17

**6**

P.3d 797 (Colo.2001); *Stark v. Poudre School District R–1*, 192 Colo. 396, 560 P.2d 77 (1977); *State Department of Highways v. Ogden*, 638 P.2d 832 (Colo.App.1981); and *City of Aurora v. Webb*, 41 Colo.App. 11, 585 P.2d 288 (1978), is misplaced. These cases involve the admissibility of evidence regarding the probability of rezoning a subject property in the future when a party's appraisal of value depends on such future rezoning. Here, Security's expert testified several times that neither his assessment of the highest and best use of Parcels A and B, nor his estimate of the market value of those parcels, depended upon rezoning.

Therefore, we conclude that the trial court did not abuse its discretion in admitting Security's comparable sales.

## IV. Memorandum

■ Security contends that the trial court abused its discretion in admitting a memorandum written by Security's property manager. We disagree.

Here, the trial court admitted the memorandum as evidence of a prior inconsistent statement in response to the property manager's testimony contrary to information contained in the memorandum. Security contends that even if the evidence was admissible as a prior inconsistent statement, the court should have excluded it because (1) it was irrelevant and (2) its prejudicial effect outweighed its probative value.

Security did not object to the introduction of the memorandum either before or during trial on the ground that such evidence was irrelevant. As a result, it waived any objection to relevancy, and we will not consider such an objection on appeal. *See People v. Watson*, 668 P.2d 965, 967 (Colo.App.1983)(defendant who objected to evidence as hearsay during trial waived objection based on prejudicial effect of evidence and could not raise that objection on appeal).

However, Security objected to the introduction of the memorandum before trial on the ground that under CRE 403 its prejudicial effect outweighed its probative value. Accordingly, we will consider this objection.

When reviewing a court's evidentiary ruling under CRE 403, we will not disturb its decision absent an abuse of discretion. *City of Englewood v. Denver Waste Transfer, L.L.C.*, 55 P.3d 191, 200 (Colo.App.2002). "CRE 403 strongly favors the admissibility of relevant evidence. . . ." *People v. Gibbens*, 905 P.2d 604, 607 (Colo.1995). On review we accord the evidence its maximum probative value and minimum prejudicial effect. *City of Englewood, supra*.

A document written by an employee during the term of his or her service and within the scope of his or her employment may be introduced into evidence against the employer as an admission. CRE 801(d)(2)(D); *Halliburton v. Pub. Serv. Co.*, 804 P.2d 213, 218 (Colo.App.1990).

■ Statements by, or attributable to, a property's owner regarding the value of property involved in a condemnation action are admissible as admissions. 5 Sackman, *supra*, § 18.12[1], at 18–75. An owner need not make computations, use a formula, or independently value the property; statements are admissible so long as they "state a value." 5 Sackman, *supra*, § 18.12[1], at 18–81.

Here, the memorandum was relevant as the owner's admission of value and to impeach the property manager's testimony that the value of Parcels A and B was not discussed at the memorialized meeting. Security does not deny that the property manager composed the memorandum, that he testified in a way that contradicted statements in the memorandum, or that the court properly admitted the memorandum as a prior inconsistent statement under CRE 613. On redirect, Security was allowed to examine the circumstances surrounding the creation of the memorandum, which alleviated its prejudicial effect.

Therefore, the trial court did not abuse its discretion in admitting the memorandum.

## V. Quarterly Reports

■ Security contends that the trial court abused its discretion in admitting certain of its quarterly reports. We disagree.

Prior to trial, Security moved to exclude the reports on the ground that they were not relevant. The court denied the motion, finding that "estimates of valuation of this property close in time to that taking are relevant to test the validity of the various appraisals that will be presented to the jury." Security argues that the trial court erred because the reports contained values calculated far earlier than the date of valuation, and did not state the property's market value, making them irrelevant.

Here, the quarterly reports were prepared by Security's property manager and contained statements of the property's value. Therefore, they were relevant as admissions of the value of the property by the owner. *See* 5 Sackman, *supra*, § 18.12[1], at 18–75, 18–81. The dates of valuation go to the weight accorded the reports, not their admissibility, and Security was properly allowed to introduce evidence of the circumstances surrounding the statements of valuation.

Therefore, we conclude that the trial court did not abuse its discretion in admitting the quarterly reports.

### VI. Market Analysis

Security argues that the trial court erred in admitting a market analysis because it is hearsay. We conclude that any error was harmless.

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected ...." CRE 103(a). An evidentiary error affects the substantial rights of a party when it affects the outcome of the case. *Rojhani v. Meagher*, 22 P.3d 554, 557 (Colo. App.2000).

During the trial, in response to School District's attempt to introduce the market analysis, Security objected on the ground that it was improper hearsay evidence. The court overruled the objection, finding that the analysis "really isn't hearsay" because "it's of the declarant (the witness), so it's not a hearsay statement."

We disagree with the trial court and conclude that the market analysis was hearsay because it was "a statement other than one made by the declarant while testifying at the trial ... offered in evidence to prove the truth of the matter asserted." CRE 801(c).

However, on appeal, Security does not allege that the court's admission of the analysis prejudiced it in any way or affected the outcome of the trial. Accordingly, we need not further address Security's argument and conclude that the error was harmless. *See* CRE 103(a); *Rojhani, supra.*

### VII. Attorney Fees

School District contends that the trial court improperly awarded attorney fees to Security under § 38-1-122, C.R.S.2006. We agree in part, disagree in part, and conclude that a remand to the trial court is necessary to determine the reasonable amount of fees to be awarded.

The pertinent part of the statute applicable here provides:

> In connection with proceedings for the acquisition or condemnation of property in which the award determined by the court exceeds ten thousand dollars, in addition to any compensation awarded to the owner in an eminent domain proceeding, the condemning authority shall reimburse the owner whose property is being acquired or condemned for all of the owner's reasonable attorney fees incurred by the owner where the award by the court in the proceedings equals or exceeds one hundred thirty percent of the last written offer given to the property owner prior to the filing of the condemnation action.

Section 38-1-122(1.5), C.R.S.2006.

Here, School District initially offered Security $3,250,000 for Parcel A. School District then decided to acquire Parcel B, gave Security an offer for Parcels A and B in the amount of $6,564,492, and, when Security rejected that offer, amended its petition in condemnation to include Parcel B. By doing so, School District more than doubled the size of the property to be condemned. The trial court awarded Security attorney fees because the court's award, based on its interpretation of the jury's determination of the

value of the property, exceeded School District's $6,564,492 offer by more than 130%.

School District argues that the trial court improperly used its second offer, made after condemnation proceedings had commenced, to determine whether to award attorney fees. School District also contends that the cases of *E–470 Public Highway Authority v. Wagner*, 77 P.3d 902 (Colo.App.2003), and *E–470 Public Highway Authority v. Kortum Investment Co.*, 121 P.3d 331 (Colo.App.2005), required the trial court to "prorate" School District's last written offer of $3,250,000 for Parcel A, given before the filing of its original condemnation action, to "the ultimate acreage actually acquired to measure whether the 130% threshold was met." Security contends that the trial court properly used School District's second offer to determine whether to award attorney fees. Under the circumstances of this case, we disagree with each of these arguments.

In *Wagner, supra,* a division of this court held that a trial court properly applied § 43–4–506(1)(h)(II)(B), C.R.S.2006, which contains similar language to § 38–1–122(1.5), when it prorated a condemnor's final written offer. There, the condemnor initially condemned thirty-nine acres, but amended its petition to condemn only approximately twenty-seven acres. Because the condemnor did not make a new "last written offer" before it amended its petition, the trial court determined the value per acre represented by the "last written offer" given and reduced that offer by deducting the value of the acreage that the condemnor decided not to condemn. Finding that the final award exceeded 130% of the prorated offer, the trial court properly awarded attorney fees to the condemnor. *Wagner, supra,* 77 P.3d at 904–05. The division noted that the trial court properly prorated the last written offer because the condemnor "did not make a new last written offer based upon the changes in the amount of land." *Wagner, supra,* 77 P.3d at 905.

In *Kortum, supra,* the condemnor initially petitioned to condemn 14.156 acres of a 19.8121–acre parcel. The condemnor sought a "permanent multi-use easement" for the remaining 5.6561 acres. Prior to filing its petition, the condemnor made a last written offer of $101,880. The condemnor subsequently amended its petition to condemn the entire 19.8121 acres so that rather than having a multi-use easement for the 5.6562 acres, the condemnor would own that acreage in fee. Three days after filing its amended petition, the condemnor tendered a second "last written offer" of $237,745.

The *Kortum* division held that the language "the last written offer given to the property owner prior to the filing of the condemnation action" in § 43–4–506(1)(h)(II)(B) meant that the condemnor's second offer could not be considered a "last written offer" under that subsection because it was given after the condemnor commenced condemnation proceedings by filing its petition. Instead, the division prorated the first offer to adjust it for the condemnation of the 5.6561 acres and concluded that the property owners were entitled to reasonable attorney fees because the prorated offer was less than half the amount ultimately awarded. *Kortum, supra,* 121 P.3d at 334. Because the original petition and the amended petition concerned the same amount of property, the division did not determine whether § 43–4–506(1)(h)(II)(B) either required or permitted a "new last written offer" when a condemnor amends its petition so substantially as to constitute a taking of "an essentially new or different character." *Kortum, supra,* 121 P.3d at 334.

We are here presented with this issue left undetermined by the *Kortum* division. Because we conclude that a "new last written offer" is permitted under such circumstances, we need not determine whether one is required.

■ In its amended petition, School District described the property to be acquired as one parcel. However, in the subsequent proceedings for the condemnation of the property, the parties and the trial court treated Parcels A and B as discrete parcels of property upon which condemnation proceedings were commenced at different times, to be acquired separately and on dates approximately one year apart. In addition, the parcels were valued separately by discrete evidence based upon each parcel's unique characteristics and qualities, and the jury in-

structions and the verdict forms addressed the parcels as discrete units of property.

Consequently, for the purposes of awarding attorney fees under § 38–1–122(1.5), this case involves essentially two separate proceedings for the condemnation of two discrete parcels of property. Therefore, we conclude that School District amended its petition in such a substantial manner that it was tantamount to the filing of a new condemnation action concerning Parcel B. Thus, School District's last written offers, given to Security prior to filing its original condemnation action as to Parcel A and its subsequent amended petition as to Parcel B, both constitute last written final offers under § 38–1–122(1.5) as to those respective parcels. The application of § 38–1–122(1.5) in this manner promotes the General Assembly's intent of "provid[ing] the parties (and particularly condemning authorities) an incentive for settling disputes before litigation ever begins." *Kortum, supra*, 121 P.3d at 334. And if we have misinterpreted or misconstrued the intent of the General Assembly concerning this statute, there is nothing to prevent that body from correcting the error and making its intent clear. *See People ex rel. Juhan v. Dist. Court*, 165 Colo. 253, 260, 439 P.2d 741, 745 (1968).

As to Parcel A, the jury determined that its value was $5,619,240. School District's last written offer to purchase Parcel A, given to Security prior to the filing of the condemnation action seeking to acquire Parcel A, was $3,250,000. The court's award as to Parcel A, which we affirm, was more than 130% of School District's last offer, and therefore Security was entitled to an award of all its reasonable attorney fees incurred in connection with the proceedings for the condemnation of Parcel A, including those incurred, and to be incurred on remand, in obtaining a determination of the amount of damages to the residue (Parcel B) between February 19, 2004 and March 7, 2005. Because we are unable to determine the amount of Security's attorney fees awarded to it by the trial court that are attributable to Parcel A and the damages to Parcel B as just described, the matter must be remanded to the trial court to determine this amount.

Because we have concluded that this case must be remanded for further proceedings as to the damages to, and the value of, Parcel B, we vacate that portion of the trial court's award of attorney fees to Security that is attributable to the proceedings for the acquisition or condemnation of Parcel B. After the new trial as to Parcel B, and if Security again requests attorney fees, the court must determine whether the award as to Parcel B equals or exceeds 130% of that portion of School District's last written offer, given prior to the filing of its amended petition, attributable to Parcel B. The trial court may, if necessary, conduct a separate hearing to determine the portion of this last offer attributable to Parcel B.

Further, we conclude that neither *Kortum, supra*, nor *Wagner*, requires a different result. Unlike the discrete parcels of property involved here, (1) in *Kortum*, the amended petition concerned the same property that was in the original petition and changed only the property interest sought to be acquired as to a portion of the property, and the new last written offer was tendered three days after the amended petition was filed, and (2) in *Wagner*, the amended petition decreased the same property sought in the original petition by ten acres. Neither of these cases involved, as here, "a taking of an essentially new or different character." *Kortum, supra*, 121 P.3d at 334.

Finally, Security requests and is entitled to an award of attorney fees incurred in this appeal under § 38–1–122(1.5), to the extent the fees are attributable to the condemnation of Parcel A, including the determination of resulting damages to Parcel B, as we have described above. Accordingly, on remand, the trial court shall also determine and award to Security these reasonable attorney fees incurred on appeal.

The judgment of the trial court is reversed with respect to the value of and the damages to Parcel B; the judgment is vacated with respect to the award of attorney fees attributable to the condemnation of Parcel B; and the case is remanded to the trial court for further proceedings consistent with this opin-

ion. The judgment is affirmed in all other respects.

Judge DAILEY and Judge FURMAN concur.