## No. 15,911.

HARRISON CONSTRUCTION COMPANY, A COPARTNERSHIP
ET AL. *v.* NISSEN.
(199 P. [2d] 886)

Decided November 15, 1948.

Messrs. JANUARY & YEGGE, Mr. MERLE M. MARSHALL, for plaintiff in error.

Mr. GEORGE H. BLICKHAHN, Mr. JOHN IRA GREEN, for defendant in error.

*In Department.*

MR. JUSTICE JACKSON delivered the opinion of the court.

PLAINTIFFS in error, who were the unsuccessful plaintiffs in the trial court, brought suit under an oral contract for leveling defendant's land. They had done some leveling for defendant in 1944 under an earlier oral contract and were paid therefor at the rate of eleven dollars per hour per unit of machinery used. The undisputed evidence is that the 1945 operations, which are the subject matter of this suit, arose out of a conference between plaintiffs and defendant held at the Walsh Hotel in Alamosa on March 20, 1945, in which it was agreed that plaintiffs should do leveling of additional land belonging to defendant. At that time they had most of their land leveling units engaged in other operations, but they agreed to furnish one unit and start leveling a certain part of defendant's land immediately at the rate of twelve dollars per hour. This particular phase was completed and it is agreed that for this part of the 1945 operations plaintiffs are entitled to $978.00 and the court so stated in its instructions.

The second phase of the 1945 operations, the basis of this litigation, concerns the subsequent leveling begun in May 1945, when plaintiffs' other equipment became available. Plaintiffs claim this was to be employed at the rate of eleven dollars per hour per unit so engaged, and that these figures were quoted to defendant at the meeting on March 20. Defendant claims there was no mention of cost until May 9, 1945, when he told plaintiff Harrison that he had only so much money to spend and suggested forty dollars an acre as the approximate cost of the work. Harrison testified that not until June 15 or 20, when work was finished and bill presented, did defendant mention any definite amount he had to expend for the work. Thus defendant's contention is that the second phase of the 1945 operations was not to be based upon the amount of time engaged in the operation, but at the rate of forty

dollars per acre of land leveled. In his pleadings and testimony he claimed that plaintiffs' operations did not result in the land being properly leveled according to specifications; that there was therefore no substantial performance.

Defendant filed three counterclaims: one for the amount of approximately $6,000.00 based upon the theory that, after plaintiffs had completed their work, it was necessary for defendant to employ someone else to complete the leveling operations so that the land would drain properly. In connection with this first counterclaim, defendant testified that he paid for this subsequent leveling at the rate of eleven dollars per hour. The second counterclaim was based upon the contention that plaintiffs' leveling operations were to be completed within a certain time in order that defendant could use portions of the land for the raising of crops during the growing season of 1945; that by reason of plaintiffs' failure so to level said land within the proper time, defendant lost crops to the amount and value of $1,125. A third counterclaim was for merchandise which plaintiffs purchased from defendant's store in the amount of $1,-493.00. This is admitted by plaintiffs and is therefore not an issue in this case.

The undisputed evidence discloses that the survey made to guide the leveling operations by plaintiffs was made by Joseph P. Sexton, Jr., an employee of the U. S. soil conservation service; that Sexton was engaged by defendant to make the survey; that defendant personally assisted in the survey; that he "held the rod," and set and marked the stakes.

Work began May 5, 1945, and ended June 4, 1945. Harrison testified that he and defendant had a conversation in the northeast corner of a field on May 9; that defendant told him he wanted him "to take that work by the acre - - - 57 acres of it," to which Harrison replied that he "wouldn't take it by the acre for him or anybody else, that I had never worked by the acre at any

price." Defendant told him to think it over and left. Defendant denies that Harrison told him he would not take it at any price by the acre. Harrison further testified that he made a suggestion to defendant with reference to cutting down the cost, but that defendant "wouldn't go for a skimming proposition at all," he wanted to level it to the stakes, which was done.

After plaintiffs removed their equipment from defendant's land on June 4, 1945, defendant made no immediate objection to the leveling work that had been performed, and on June 20 tendered plaintiffs a check in the amount of $3,324.00, which included $1,044.00 for the first phase of the work, leaving $2,280.00 as payment for the second phase which is the basis of this litigation. Harrison refused the tender, and the next day defendant left the check at plaintiffs' bank with instructions to credit to plaintiff's account. Plaintiffs never gave the bank authority to carry out this order, and after a time defendant called for and received his check from the bank. All of this occurred before this action was instituted.

The jury returned a verdict in favor of defendant on plaintiffs' complaint, and verdicts in favor of plaintiffs on defendant's first two counterclaims. Error is specified on the ground that these verdicts are inconsistent and not supported by the evidence. Error also is alleged because of certain court instructions given the jury, and subsequent proceedings leading up to the judgment.

The record shows that the taking of testimony was completed at five o'clock of the third day of the trial; that the court read its instructions to the mixed jury at six o'clock, and then inquired whether it would be necessary to make arrangements for overnight accommodations. The foreman of the jury thereupon replied that they did not understand instruction No. 1, which contained the court's statement of the pleadings and the issues involved in the case. The court replied it would not be proper to comment further upon it. Fifteen min-

utes later the court again recalled the jury and inquired whether it would be necessary to provide accommodations for the night. Thereupon the following colloquy took place:

"The Court: Now the question is shall we find quarters for you ladies and gentlemen? A Juror: No, I don't think it will take very long but it will take an hour or so yet. We will have to go all through that again. The Court: Is that the way you all feel about it? A juror: There is one question we can't get together on. The Court: Well then bring in your verdict according to that last instruction I gave you [relating to a sealed verdict] at ten o'clock tomorrow and all the papers at ten o'clock with your verdicts. A juror: Alright." At that time a form of sealed verdict was given to the jury. The record is silent as to when the signed, sealed verdict was delivered to the clerk. It was opened by the court the following morning, June 13, 1946, at ten o'clock a.m.

There would appear to be some ground for the contention that the jury was not very deliberate in its consideration of this case, and that it acted even hastily in view of the statement of its foreman, that they did not understand the issues formed by the pleadings as set forth by the court in its first instruction.

In instruction No. 4 the trial court, referring to the sum of $978.00 for the work that had been performed on the first phase of the 1945 contract, used the following language:

"On the other hand, if you find by a preponderance of the evidence that after performance under the so-called 'first contract,' for $978.00, as the defendant contends, the parties agreed that plaintiff should level 57 acres of land at the rate of $40.00 per acre, and if you find that plaintiff substantially performed thereunder, then your verdict on the cause of action in the complaint, should be for the plaintiff in the sum of $978.00 plus $2280.00.

"But if you find that the plaintiff failed to substan-

tially perform as substantial performance is defined in these instructions, then your verdict under the cause of action in the complaint will be for $978.00."

The jury's verdict in the sum of $1,493 represented solely the amount that it was conceded plaintiffs owed defendant for merchandise, mentioned in the third counterclaim. The jury ignored the item of $978.00 in favor of plaintiffs, which also was not in dispute. The trial court, at the suggestion, and with the consent, of defendant's counsel that a remittitur should issue in the amount of $978.00 in favor of plaintiffs, modified the verdict of the jury to that extent and entered judgment for the stated amount after the deduction of $978.00.

■ Error is specified on the happening under instruction No. 4, in that: (1) The jury ignored the instruction as it related to the $978.00, and (2) the court erred in entering a judgment that modified the jury's verdict, for the purpose of correcting this lapse of the jury. As to the first point, the jury clearly committed an error. As to the second point, wherein error is alleged on the part of the court in attempting to correct the jury's error by changing the amount of its verdict, we have been cited to no authorities which support the trial court's action. We note the general rule, that the trial court's right to amend the verdict after the jury has been dismissed applies to matters of form and not of substance. 53 Am. Jur. 758, §1094. We appear to have followed this rule in *Bartlett v. Hammond,* 76 Colo. 171, 230 Pac. 109, where, at page 175, we said: "The court, however, may not correct a verdict in matter of substance; otherwise, the court could arbitrarily set aside a verdict of a jury in its entirety and make a contrary finding in a law action for itself and render judgment upon it." (citing numerous authorities). See, also, *Tunnel Mining and Leasing Co. v. Cooper,* 50 Colo. 390, 115 Pac. 901.

■ In instruction No. 13 the court instructed the jury:

"You are instructed to find a verdict for one party or the other on the claim of the plaintiff set out in the complaint, and in each of the counterclaims of the defendant.

"Separate forms of verdict are furnished you for each claim and counterclaim.

"You will not compute interest on any amounts you find due one party or the other. Nor will you set off the amount in one verdict against another, but will leave such set-offs and computation of interest to the court."

As hereinbefore stated, plaintiffs' evidence indicated that payment was to be at the rate of eleven dollars per hour of work for each unit. Defendant's contention was that the work was to be paid for on an acreage basis. Defendant testified that he was damaged: (1) By plaintiffs' delay, and (2) by their not having performed the work according to specifications, and that by reason of the latter he was forced to employ someone else to complete the leveling.

We can find no evidence in the record to support the verdicts of the jury. It appears that not only are they inconsistent, but that they were reached in disregard of the last sentence of the court's instruction No. 13.

Defendant lays special emphasis on instruction No. 5 which reads as follows: "The court instructs the jury that substantial performance means strict performance in all essentials necessary to the full accomplishment of the purposes for which the thing contracted for was designed. Failure as to any of such features, whether in good faith or bad faith, any departure from the contract, not caused by inadvertence, or unavoidable omission, any defect so essential as that the object which the parties intended to accomplish to have a specified amount of work performed in a particular manner is not accomplished, is inconsistent with substantial performance of the contract, but there may be slight deviations or unintentional omissions from the performance of the contract, then the contractor may be said to have substan-

tially performed the contract, but his recovery will be diminished by the amount necessary to compensate for any deficiency shown by the evidence to exist, but deviations which are more than slight or trivial, or which defeat the intended objective of the contract, will defeat a recovery by the contractor." It appears from counsels' briefs that this instruction is based upon a statement in *Manning v. School District,* 124 Wis. 84, 102 N. W. 356, which is approved by the author of Page on Contracts (2d ed.) in volume 5, p. 4922. Counsel for plaintiffs argue that the rule of strict performance, as laid down by the instruction in question, is not the rule of substantial performance adopted in this jurisdiction. In *Morris v. Hokosona,* 26 Colo. App. 251, 143 Pac. 826, the rule allowing recovery for substantial performance was applied in a case involving a building contract. In *Louthan v. Carson,* 63 Colo. 473, 168 Pac. 656, which likewise involved a building contract, we cited with approval the Hokosona case in which is quoted section 366 from Anson on the Law of Contracts (Huffcut's 2d Am. ed.) 352, 366. These cases do not appear to have been overruled, and the doctrine of substantial performance announced therein appears to be even more appropriate in a land leveling contract, such as is involved in the instant case. If and when a new trial hereof is had, we believe the rule of strict performance, as set forth in *Manning v. School District, supra,* should not be included in the instructions to the jury.

In conclusion, we are of the opinion that prejudicial error is disclosed in the record of this case. From a statement of a juror it appears that the jurymen did not understand the first instruction. The fifth instruction was erroneous, and may have misled the jurors in rendering their verdicts. Because of the lateness of the hour when the case was given to the jury, there seems to have been an element of haste in its deliberations. Whether because of that fact or some other, the jury brought in verdicts that not only bear the mark of in-

consistency, but also apparently ignored the instruction of the court forbidding set-offs. Finally, the jury wholly failed to follow the direction of the court in awarding $978.00 to plaintiffs for the first phase of the leveling operations. It seems reasonable to conclude that the verdicts were the result of prejudice or mistake on the part of the jury.

The judgment accordingly is reversed and the cause remanded.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE ALTER concur.