**SCHOOL DISTRICT NO. 12, Adams County, Colorado, n/k/a Adams 12 Five Star Schools, a Colorado quasi-municipal corporation, Petitioner/Cross–Respondent**

v.

**SECURITY LIFE OF DENVER INSURANCE COMPANY, a Colorado corporation, successor by name change to Security Life and Accident Company, Respondent/Cross–Petitioner.**

No. 07SC340.

Supreme Court of Colorado,
En Banc.

June 2, 2008.
Rehearing Denied June 23, 2008.*

* Justice Hobbs, Justice Rice, and Justice Coats would grant the Petition.

Grimshaw & Harring, P.C., Wayne B. Schroeder, Jody Harper Alderman, Carrie S. Bernstein, Denver, Colorado, Attorneys for Petitioner/Cross–Respondent.

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Darrell G. Waas, James T. Johnson, Denver, Colorado, for Respondent/Cross–Petitioner.

Justice BENDER delivered the Opinion of the Court.

## I.  Introduction

We granted certiorari in this eminent domain proceeding, to review the court of appeals' opinion in *School District No. 12 v. Security Life of Denver Insurance Co.,* 179

P.3d 1 (Colo.App.2007) (selected for official publication), in which the court of appeals held that the trial court's confirmation of the jury verdict was an improper change of substance and, thus, remanded the case to the trial court for a partial retrial.[1] In this case, Petitioner/Cross–Respondent School District No. 12, a quasi-municipal corporation in Adams County, Colorado, now known as Adams 12 Five Star Schools, seeks to condemn, through its power of eminent domain, 138 acres of land owned by Respondent/Cross–Petitioner Security Life of Denver Insurance Co. This appeal involves three issues: (1) whether the trial court's confirmation of the jury verdict was an improper change of substance; (2) whether the court of appeals incorrectly awarded "interim damages" to Security Life as compensation for the condemnation of its entire property; and (3) whether Security Life is entitled to attorney fees.

Due to the way that the School District structured its petition for condemnation and its amendment to that petition, this case involves two distinct and separable condemnations that were tried in a single condemnation proceeding: one in which the School District would condemn 60 of the 138 acres ("Parcel A") on February 19, 2004, the date the School District took possession of the 60 acres, thus resulting in damages to the rest of the property; and another in which the School District would first condemn Parcel A on February 19, 2004, and would then condemn the remaining 78 acres ("Parcel B") on February 7, 2005, the date of trial.

We conclude that the jury followed the requirements set forth in the jury instructions and answered the interrogatories contained in the verdict form accordingly, and that the trial court's ruling reflected the jury's intent. Hence, we hold that the trial court's ruling was a permissible change of form because it did nothing more than confirm what the jury had already determined: that if the School District wanted to condemn all 138 acres, then it must compensate Security Life first for taking Parcel A on February 19, 2004, which resulted in damages to Parcel B, and then for taking Parcel B on February 7, 2005.

Because the School District will condemn all 138 acres, Security Life is not entitled to damages. As part of its holding, the court of appeals remanded the case to the trial court to determine the value of damages to Parcel B for the period between the date the School District took possession of Parcel A and the date the School District took possession of Parcel B. We vacate this holding to the extent that it can be construed to create a category of so-called interim damages.

Under section 38–1–122(1.5), C.R.S. (2007), a landowner is entitled to attorney fees if the condemnation award equals or exceeds 130 percent of the last written offer given to the landowner prior to the filing of the condemnation proceeding. This case involves two distinct and separable condemnations that were tried in a single condemnation proceeding. The School District made a written offer to purchase Parcel A before filing its petition in condemnation to acquire Parcel A. Before amending its petition in condemnation to acquire Parcel B as well, the School District made a written offer to purchase both Parcel A and Parcel B. Because the condemnation award in either scenario exceeds 130 percent of the School District's corresponding final written offer, Security Life is entitled to attorney fees under the statute. Security Life requests attorney fees incurred on appeal and states section 38–1–122(1.5) as its legal basis for such fees. We direct the

1. We granted certiorari on the following four issues:

    1. Whether a landowner is entitled to damages in a condemnation case when all of the landowner's property is acquired and the landowner did not assert a claim for damages at trial.
    2. Whether the amount of damages, if any, to Parcel B, and the "after condition" value of Parcel B, can be retried without retrying the value of Parcel A.

    3. Whether the last written offer prior to filing a petition in condemnation, as to one parcel, and a written offer made prior to filing an amended petition in condemnation, as to the portion of property added to the condemnation in the amended petition, constitute a "last written offer" under the applicable attorney fee statute, section 38–1–122(1.5), C.R.S. (2006).
    4. Whether the court of appeals correctly decided that the trial court amended the jury verdict, changing its substance as opposed to its form.

trial court to determine whether Security Life is entitled to attorney fees incurred on appeal and, if so, to determine the reasonable amount of those fees.

For these reasons, we reverse the court of appeals' judgment and remand this case to that court to be returned to the trial court with directions to enter judgment pursuant to the trial court's order which requires the School District to pay Security Life $9,274,520 for the condemnation of all 138 acres.

## II. Facts and Proceedings Below

Security Life owns approximately 138 acres of contiguous and similarly zoned land located immediately south of 128th Avenue, between Huron Street and Interstate 25 in Westminster, Colorado. On January 12, 2004, the School District made a final offer to purchase 60 of the 138 acres, Parcel A, for $3,250,000, which Security Life rejected. On January 16, 2004, the School District filed a petition in condemnation to acquire, through its power of eminent domain, Parcel A for the construction of a high school. On February 19, 2004, the trial court granted the School District possession of Parcel A.

On May 18, 2004, the School District made a final offer to purchase both Parcel A and the remaining 78 acres, Parcel B, for $6,564,492, which Security Life rejected. On June 15, 2004, the School District amended its petition in condemnation to acquire both Parcel A and Parcel B for construction of a high school, middle school, and sports stadium. However, because the School District had not yet determined if it would condemn the entire property, it did not seek immediate possession of Parcel B. Rather, the School District intended to wait until the value of Parcel B was determined at trial before deciding whether to condemn Parcel B.

At trial, the jury was instructed that the condemnation proceeding involved two parcels of land, Parcel A and Parcel B. Instruction No. 2 stated:

The property that the petitioner seeks to acquire is approximately 138 acres.... *The petitioner seeks to acquire the property in two parcels.* One is a roughly rectangular 60–acre parcel located on the

southeast corner of Huron Street and 128th Avenue ("Parcel A"). The other is an L-shaped 78–acre parcel surrounding two sides of Parcel A and directly abutting 128th Avenue, Interstate 25, and Huron Street ("Parcel B").

(Emphasis added).

The jury was further instructed that the condemnation proceeding involved two scenarios, one which was certain and in which possession had already occurred, and another which was hypothetical. The jury was required to value each of these scenarios. In the first scenario, in which possession occurred before the date of trial, the School District would condemn Parcel A on February 19, 2004, the date the School District took possession of Parcel A, thus resulting in damages to Parcel B. Instruction No. 2 stated:

The petitioner has had possession of Parcel A since February 19, 2004, *and will acquire Parcel A.*

Parcel B is the residue after Parcel A is taken. *You must determine the reasonable market value of Parcel A as of February 19, 2004, and the damages, if any, to Parcel B.*

(Emphasis added).

In the second and hypothetical scenario, the School District would first condemn Parcel A on February 19, 2004, thus resulting in damages to Parcel B, and would then condemn Parcel B on February 7, 2005, the date of trial. Instruction No. 2 stated:

The petitioner does not have possession of Parcel B, *but may acquire Parcel B* at the conclusion of the trial. *In the event the petitioner decides to actually take Parcel B, you must also determine the reasonable market value of Parcel B as of the date of this trial, February 7, 2005.*

(Emphasis added).

Having explained these two scenarios, Instruction No. 2 summarized the jury's task as two-fold: first, to determine the value of Parcel A and the resulting damages to Parcel B on February 19, 2004, the date the School District took possession of Parcel A; and second, to determine the value of Parcel B on February 7, 2005, the date of trial:

[Y]ou shall without fear, favor or partiality ascertain the reasonable market value of Parcel A and the amount of compensable damages, if any, to the residue, which is Parcel B, as of February 19, 2004, and the reasonable market value of Parcel B as of the date of this trial, February 7, 2005.

Based on the jury's determination of the value of Parcel B, the School District would then determine if it wanted to condemn Parcel B.

To determine the value of the damages to Parcel B, if any, the jury was instructed to subtract the value of Parcel B after the School District's possession of Parcel A from the value of Parcel B before the School District's possession of Parcel A. Instruction No. 11 stated:

> Any damages are to be measured by the decrease, if any, in the reasonable market value of the residue, that is, *the difference between the reasonable market value of the residue before the property actually taken is acquired and the reasonable market value of the residue after the property actually taken has been acquired.*

(Emphasis added).

In explaining the meaning of the term "residue," Instruction No. 11 also emphasized that the condemnation proceeding involved two scenarios. Instruction No. 11 stated:

> "Residue" means that portion of any property which is not taken but which belongs to the respondent, Security Life of Denver Insurance Company ... *The petitioner, Adams County School District No. 12, has had possession of Parcel A since February 19, 2004.* The residue is Parcel B. *The petitioner may decide to acquire Parcel B, in which case, there will be no residue. For purposes of this trial, however, you are to determine the amount of compensable damages, if any, to Parcel B, in the event Parcel B is not acquired by the petitioner.*

(Emphasis added).

The verdict form asked the jury to determine the value of Parcel A on the date the School District took possession of Parcel A; the value of the damages to Parcel B; and the value of Parcel B on the date of trial:

> (2) The value of Parcel A, which is actually taken, on February 19, 2004, was $ _____
>
> (3) The damages to the residue of such property, or Parcel B, if not actually taken, are $_____
>
> . . .
>
> (5) The value of Parcel B on February 7, 2005, if actually taken is $_____

In answering the interrogatories contained in the verdict form, the jury determined that the value of Parcel A on the date the School District took possession of Parcel A was $5,619,240; the value of the damages to Parcel B was $2,000,000;[2] and the value of Parcel B on the date of trial was $1,655,280.

Following the jury verdict, Security Life filed a C.R.C.P. 59[3] post-trial motion to "confirm" the jury verdict to show that if the School District intended to condemn all 138 acres, then it must compensate Security Life first for the value of Parcel A on the date the School District took possession of Parcel A, together with the damages to Parcel B, and then for the value of Parcel B on the date of trial. In other words, to acquire the entire property, the School District would have to pay Security Life the sum of the three values provided by the jury in the verdict form, which equals $9,274,520.

The School District disagreed with Security Life's interpretation of the verdict form, arguing that Colorado condemnation law permits compensation for damages only when part of a property is acquired, and not when the entire property is acquired. Thus, the

---

2. As discussed in the analysis below, we agree with the trial court's conclusion that the jury's valuation of the damages to Parcel B was based on the School District's possession of Parcel A on February 19, 2004.

3. C.R.C.P. 59 governs motions for post-trial relief. It states, in pertinent part: "[A] party may move for post-trial relief including: (1) A new trial of all or part of the issues; (2) Judgment notwithstanding the verdict; (3) Amendment of findings; or (4) Amendment of judgment. Motions for post-trial relief may be combined or asserted in the alternative."

School District argued that the amount of compensation owed to Security Life for the condemnation of both Parcel A and Parcel B, is the sum of the value of Parcel A on the date the School District took possession of Parcel A, and the value of Parcel B on the date of trial, which equals $7,274,520.

The trial court ruled that the amount of compensation owed to Security Life for the condemnation of the entire property is the sum of the three values provided by the jury in the verdict form, or $9,274,520. The trial court reasoned that to disregard the value of the damages to Parcel B that was provided by the jury in the verdict form, would lead to an absurd result in which the damages to Parcel B would exceed the fee value of Parcel B.

In another order, issued on March 7, 2005, the trial court granted the School District possession of Parcel B. Later, the trial court awarded attorney fees to Security Life under section 38–1–122(1.5).

On appeal, the court of appeals held that the trial court's ruling confirming the jury verdict was an improper change of substance and, thus, remanded the case to the trial court for a partial retrial. *Sch. Dist. No. 12*, 179 P.3d at 4–6. The court of appeals reasoned that the jury instructions and verdict form failed to provide adequate instruction to the jury as to the damages to Parcel B caused by the School District's possession of Parcel A, as reflected in the jury's "damage award [which] exceeded the value of Parcel B." *Id.* at 4–5. The court of appeals concluded that the instructions and verdict form were confusing because they failed to instruct the jury "that it could award damages to Security [Life] for the time period between February 19, 2004 [the date the School District took possession of Parcel A] and February 7, 2005 [the date of trial]." *Id.* at 6.

Accordingly, the court of appeals affirmed the value of Parcel A as provided by the jury in the verdict form and reversed both the value of the damages to Parcel B and the value of Parcel B. *Id.* at 7. Taking into account the fact that the School District took possession of Parcel B on March 7, 2005, the court of appeals remanded the case to the trial court to determine the damages to Par-

cel B between the date the School District took possession of Parcel A and the date the School District took possession of Parcel B, and to determine the value of Parcel B on the date the School District took possession of Parcel B. *Id.*

Presumably, then, under the court of appeals' interpretation of the condemnation proceeding, the amount of compensation owed to Security Life for the taking of all 138 acres would be the sum of the value of Parcel A on the date the School District took possession of Parcel A; the value of the resulting damages to Parcel B between the date the School District took possession of Parcel A and the date the School District took possession of Parcel B; and the value of Parcel B on the date the School District took possession of Parcel B.

As to whether Security Life is entitled to attorney fees under section 38–1–122(1.5), the court of appeals concluded that both of the School District's written offers "constitute last written final offers under § 38–1–122(1.5) as to those respective parcels." *Id.* at 22. As such, the court of appeals affirmed the portion of the trial court's ruling that awarded Security Life attorney fees incurred in connection with the determination of the value of Parcel A, together with the determination of the value of the damages to Parcel B. *Id.* at 23. The court of appeals remanded the case to the trial court to determine the amount of attorney fees incurred in connection with the determination of the value of the damages to Parcel B as determined on retrial, and to determine whether the portion of the School District's final offer to purchase Parcel A and Parcel B for $6,564,492 that is attributable to Parcel B is equal to or exceeds 130 percent of the value of Parcel B as determined on retrial. *Id.*

Having granted the School District's petition for certiorari and Security Life's cross-petition for certiorari, we now review these issues.

### III. Analysis

We review the trial court's ruling on Security Life's C.R.C.P. 59 post-trial motion for an abuse of discretion. *Buckley Powder Co. v. State*, 70 P.3d 547, 564 (Colo.

App.2002); *see Blue Cross of W. N.Y. v. Bukulmez*, 736 P.2d 834, 840 (Colo.1987). Likewise, we review the trial court's ruling on Security Life's motion for attorney fees for an abuse of discretion. *Haystack Ranch, LLC v. Fazzio*, 997 P.2d 548, 556 (Colo.2000). A trial court abuses its discretion if its actions are manifestly arbitrary, unreasonable, or unfair. *Colo. Nat'l Bank of Denver v. Friedman*, 846 P.2d 159, 166–67 (Colo.1993).

### A. The Trial Court's Ruling Was a Permissible Change of Form

■ A trial court may amend a jury verdict regarding matters of form but not regarding matters of substance. *Harrison Constr. Co. v. Nissen*, 119 Colo. 42, 47, 199 P.2d 886, 888–89 (1948). The rationale of this rule is obvious. If a trial court is permitted to amend a jury verdict regarding matters of substance, then "the court could arbitrarily set aside a verdict of a jury in its entirety, and make a contrary finding in a law action for itself, and render judgment upon it." *Bartlett v. Hammond*, 76 Colo. 171, 175, 230 P. 109, 110 (1924). A change of substance is a change that affects the underlying determination made by the jury, while a change of form is one that corrects a technical error made by the jury without affecting the underlying determination made by the jury. *Weeks v. Churchill*, 44 Colo.App. 520, 615 P.2d 74, 75 (1980). Therefore, if an inconsistency in a jury verdict demonstrates that the jury "did not understand the directions, was misled, or ignored certain instructions," then any change in the verdict made by the court is a change of substance and not a change of form. *Id.* at 76. However, if an inconsistency in a jury verdict can be resolved based upon the instructions given to the jury and without violating the intent of the jury, then such a change is a change of form. *Id.* (citing *Morgan v. Gore*, 96 Colo. 508, 510–12, 44 P.2d 918, 919–20 (1935)).

■ Because an appellate court is bound by the jury's findings, a jury verdict will not be reversed for inconsistency where the jury has been properly instructed by the trial court and where the record contains sufficient competent evidence to support the finding. *Hock v. N.Y. Life Ins. Co.*, 876 P.2d 1242, 1259 (Colo.1994). To determine whether the jury could have logically reached its verdict, the appellate court must review the jury instructions, the jury verdict forms, and the evidence. *Id.* Furthermore, the appellate court must attempt to reconcile the jury's answers to a special verdict,[4] if it is at all possible, based upon the evidence and the instructions given. *Id.* If there is a view of the case that makes the jury's answers consistent, then the appellate court must reconcile the special verdict in that way. *Id.*

■ Here, the jury instructions and interrogatories contained in the verdict form asked the jury to determine the value of Parcel B on the date of trial, at a time when the School District had possessed Parcel A for nearly a year. Instruction No. 2 explained to the jury that the condemnation proceeding involved two scenarios, one which was certain and in which possession had already occurred, and another which was hypothetical. In the first scenario, in which possession occurred before the date of trial, the School District would condemn Parcel A on February 19, 2004, the date the School District took possession of Parcel A. In the second and hypothetical scenario, the School District would condemn Parcel A on February 19, 2004, thus resulting in damages to Parcel B, and would then condemn Parcel B on February 7, 2005, the date of trial. Having explained these two scenarios, Instruction No. 2 summarized the jury's task as twofold: first, to determine the value of Parcel A and the resulting damages to Parcel B on the date the School District took possession of Parcel A; and second, to determine the value of Parcel B on the date of trial. Consistent with the explanations and requirements set forth in Instruction No. 2, the interrogatories contained in the verdict form asked the jury for the value of Parcel A on the date the School District took possession of Parcel A; the value of the damages to Parcel B; and the value of Parcel B on the date of trial.

4. A special verdict is "[a] verdict that gives a written finding for each issue, leaving the application of the law to the judge," as opposed to a general verdict in which "the jury finds in favor of one party or the other." *Black's Law Dictionary* 1555 (7th ed.1999). The jury verdict in this case was a special verdict.

As to the value of damages to Parcel B, Instruction No. 11 told the jury that "[a]ny finding of damages to the residue shall not affect your determination of the value of the property actually taken." Thus, Instruction No. 11 prohibited the jury from adding the value of the damages to Parcel B to the value of Parcel B on the date of trial. Moreover, the interrogatory regarding the value of Parcel B specifically asked for the value of Parcel B on the date of trial. For these reasons, the jury determined that the value of Parcel B on the date of trial was the value of Parcel B as damaged by the School District's possession of Parcel A.

In other words, the interrogatories contained in the verdict form told the jury that the School District already possessed Parcel A, which resulted in damages to Parcel B, and asked the jury to value the damages to Parcel B. Moreover, Instruction No. 11 prohibited the jury from adding the value of the damages to Parcel B to the value of Parcel B on the date of trial. As such, the jury accurately and appropriately determined that the value of Parcel B as it existed on the date of trial was the value of Parcel B as damaged by the School District's possession of Parcel A.

Following the requirements set forth in the jury instructions and answering the interrogatories contained in the verdict form, the jury determined that the value of Parcel A on the date the School District took possession of Parcel A was $5,619,240; the value of the resulting damages to Parcel B was $2,000,000; and the value of Parcel B on the date of trial was $1,655,280.

The trial court ruled that the value of Parcel B for the purpose of condemning Parcel B is the sum of the value of Parcel B as damaged by the School District's possession of Parcel A and the value of the damages to Parcel B. This equation makes the value of Parcel B whole, as if it had not been damaged by the School District's possession and taking of Parcel A on February 19, 2004, and is easily determined by adding the value of Parcel B as damaged, $1,655,280, to the value of the damages to Parcel B, $2,000,000, which equals $3,655,280.

The logic of this calculation is bolstered by Instruction No. 11, which required the jury to determine the value of the damages to Parcel B by subtracting the value of Parcel B after the School District's possession of Parcel A from the value of Parcel B before the School District's possession of Parcel A.

Thus, to determine that the value of the damages to Parcel B due to the School District's possession of Parcel A was $2,000,000, the jury first had to determine that the value of Parcel B before the School District's possession of Parcel A was $3,655,280 and that the value of Parcel B after the School District's possession of Parcel A was $1,655,280.

Viewing the trial court's ruling mathematically illustrates this point. For the condemnation of Parcel A, the trial court ordered the School District to pay $5,619,240 for Parcel A, plus $2,000,000 for the resulting damages to Parcel B. Because the verdict form states that Parcel A "is actually taken," the School District was required to pay Security Life $7,619,240 for the condemnation of Parcel A, which the School District has possessed since February 19, 2004. For the condemnation of Parcel B, the trial court ordered the School District to pay Security Life an additional $1,655,280 because the jury determined that the value of Parcel B, as it existed on the date of trial and as damaged by the School District's possession of Parcel A, was $1,655,280. Hence, to acquire both Parcel A and Parcel B through its power of eminent domain, the School District must pay Security Life $9,274,520, which is the sum of the value of the two distinct and separable condemnations as determined by the jury.

Under either condemnation scenario, the jury, in its answers to the interrogatories contained in the verdict form, logically accounted for the damages to Parcel B due to the School District's possession of Parcel A on February 19, 2004. In the first scenario, in which possession had already occurred, the School District would take Parcel A, thus resulting in damages to Parcel B, and would pay Security Life $7,619,240, which is the sum of the value of Parcel A on the date the School District took possession of Parcel A and the value of the resulting damages to Parcel B. In the second and hypothetical scenario, the School District would take Parcel A on February 19, 2004, and would then

take Parcel B on the date of trial. In the second scenario, the School District would pay Security Life an additional $1,655,280, which is the value of Parcel B as it existed on the date of trial—that is, the value of Parcel B less the damages that had already occurred due to the School District's possession and taking of Parcel A.

At first blush, the facts of this case appear to be analogous with the facts in *Boulder Valley School District R–2 v. Price*, 805 P.2d 1085, 1092–94 (Colo.1991), *rev'd on other grounds by Community Hospital v. Fail*, 969 P.2d 667, 670 (Colo.1998), in which we held that the court of appeals' attempt to correct an inconsistent jury verdict was a change of substance and not one of form because the jury instructions and verdict forms were misleading. There, we explained that the jury was presented with two verdict forms, one for each defendant. *Id.* at 1093. Because the jury in *Boulder Valley* had no jury instruction stating that it was necessary to mark only one verdict form for the teacher, or that, in the alternative, only one defendant was liable, we concluded that the jury had been misled by the jury instructions and verdict forms. *Id.* On these grounds, we remanded the case for a new trial. *Id.* at 1094.

Closer review reveals that the facts of *Boulder Valley* are distinguishable from the facts of this case. In *Boulder Valley,* the court of appeals changed the jury verdict in a way that imposed damages on a defendant even though the jury had indicated that the defendant was liable for "$0" in damages. *Id.* at 1093–94. Here, the trial court imposed judgment based on the sum of two values that were determined by the jury. In this case, the trial court changed neither the values provided by the jury in the verdict form nor the substance of any interrogatory contained in the verdict form. Rather, the trial court used the jury's values to determine the answer to a question that was not presented to the jury regarding the second and hypothetical scenario: What is the total amount of compensation owed by the School District to Security Life for the taking of both Parcel A and Parcel B? On that question, the trial court determined that the answer was the sum of the three values provided by the jury in the verdict form, or $9,274,520.

The principles set forth in *Hock* require us to review the jury instructions, the jury verdict forms, and the evidence in an attempt to reconcile the jury's answers to a special verdict based upon the evidence and the instructions given. 876 P.2d at 1259. Following these principles and for the reasons stated above, we conclude that the jury followed the requirements set forth in the jury instructions and answered the interrogatories contained in the verdict form accordingly, and that the trial court's ruling reflected the jury's intent. Hence, we hold that the trial court's ruling was a permissible change of form because it did nothing more than confirm what the jury had already determined: that if the School District wanted to condemn all 138 acres, then it must compensate Security Life first for taking Parcel A on February 19, 2004, which resulted in damages to Parcel B, and then for taking Parcel B on February 7, 2005.

**B. Because the School District Will Condemn All 138 Acres, Security Life Is Not Entitled to Damages**

The School District argues that the court of appeals incorrectly awarded "interim damages" to Security Life as compensation for the condemnation of its entire property. Both parties agree that because the School District will condemn all 138 acres, Security Life is not entitled to damages. *See* § 38–1–115(2), C.R.S. (2007) ("No findings as to damages ... shall be required in cases involving the total taking of property.").

Although the court of appeals does not use the term "interim damages," it remanded the case to the trial court to determine the value of damages to Parcel B for the period between the date the School District took possession of Parcel A and the date the School District took possession of Parcel B. We vacate this part of the court of appeals' judgment to the extent that it can be construed to create a category of so-called interim damages.

**C. Security Life Is Entitled to Attorney Fees Under Section 38–1–122(1.5)**

Under section 38–1–122(1.5), a landowner is entitled to attorney fees if the condemna-

tion award equals or exceeds 130 percent of the last written offer given to the landowner prior to the filing of the condemnation proceeding:

[I]n addition to any compensation awarded to the owner in an eminent domain proceeding, the condemning authority shall reimburse the owner whose property is being acquired or condemned for all of the owner's reasonable attorney fees incurred by the owner where the award by the court in the proceedings *equals or exceeds one hundred thirty percent of the last written offer given to the property owner prior to the filing of the condemnation action.*

(Emphasis added).

The School District contends that the plain language of section 38–1–122(1.5) requires a court to disregard any written offer other than the one made prior to the filing of the petition in condemnation. Thus, the School District maintains that the final written offer in this case is its final offer to purchase Parcel A for $3,250,000, which was made four days before the School District filed its petition in condemnation. The School District further argues that the offer to purchase Parcel A should be modified to reflect its amendment to the petition in condemnation by prorating the offer, either by the square foot or by the square acre, to a proportional value of either $7,477,761.81 or $7,474,999 depending on which unit value is used in the calculation. In either case, the amount of compensation owed by the School District to Security Life for the condemnation of all 138 acres—$9,274,520, as confirmed by the trial court—would not equal or exceed 130 percent of the prorated last written offer, and Security Life would not be entitled to any attorney fees.

In support of its position, the School District cites two court of appeals cases: *E–470 Public Highway Authority v. Wagner*, 77 P.3d 902, 903–05 (Colo.App.2003), and *E–470 Public Highway Authority v. Kortum In-*

*vestment Co.*, 121 P.3d 331, 332–34 (Colo. App.2005). There are no Colorado cases that interpret section 38–1–122(1.5) in situations such as the one in this case, where a condemning authority makes a final written offer before filing its petition in condemnation and then decides to amend the petition in condemnation in a way that changes the amount of property condemned. However, *Wagner* and *Kortum Investment* required the court of appeals to interpret identical language from section 43–4–506(1)(h)(II)(B),[5] which pertains to highway condemnation proceedings, and to apply that interpretation to situations in which the condemning authority amended its petition in condemnation.

In *Wagner*, the E–470 Highway Authority made a written offer to purchase thirty-nine acres, which the landowner rejected, before filing a petition in condemnation to acquire the property. 77 P.3d at 903. The highway authority later amended its petition in condemnation to acquire only twenty-seven acres and an easement. *Id.* Because the highway authority did not make a "new last written offer" before it amended its petition, the trial court determined the value per acre represented by the written offer to purchase the thirty-nine acres and then reduced that offer by deducting the value of the acreage that the highway authority decided not to condemn. *Id.* at 904. On appeal, the court of appeals affirmed, finding that the trial court properly prorated the last written offer because the highway authority "did not make a new last written offer based upon the changes in the amount of land." *Id.* at 905.

In *Kortum Investment*, the E–470 Highway Authority made a written offer to purchase fourteen acres in fee, as well as an easement to use five and a half acres, which the landowners rejected. 121 P.3d at 332. The highway authority then filed a petition in condemnation to acquire the fourteen acres in fee as well as an easement to use the five

---

**5.** Section 43–4–506(1)(h)(II)(B) states in relevant part:

In connection with proceedings for the authority's acquisition or condemnation of property ... in which the final value of the property as determined by the court exceeds ten thousand dollars, the court shall award the owner all of such owner's reasonable attorney fees and the

reasonable costs of the litigation incurred by such owner where the award by the court in such proceedings *equals or exceeds one hundred thirty percent of the last written offer given to the property owner prior to the filing of the condemnation action.*

(Emphasis added).

and a half acres. *Id.* Subsequently, the highway authority amended its petition in condemnation to acquire the entire nineteen and a half acres in fee, and made a written offer to purchase the nineteen and a half acres in fee three days after filing the amendment, which the landowners rejected. *Id.*

Based on the second written offer, the trial court awarded the landowner attorney fees. *Id.* The court of appeals held that the second written offer could not be considered a final written offer because the highway authority offered it three days after filing its amended petition, in contradiction to the plain language of the statute which requires final written offers to be made "prior to the filing of the condemnation action." *Id.* Citing *Wagner*, the court of appeals held that the trial court should have prorated the highway authority's first written offer to a proportional value for the purchase of the entire property in fee. *Id.* at 334. In dicta, the court of appeals commented that it is unclear whether section 43–4–506(1)(h)(II)(B) either requires or permits a "new last written offer when the condemning authority amends its petition in such a substantial manner as to warrant a conclusion that a taking of an essentially new or different character is at issue." *Id.*

■ However, *Wagner* and *Kortum Investment* are distinguishable from this case because, unlike the condemnation proceedings in either *Wagner* or *Kortum Investment*, this case involves two distinct and separable condemnations that were tried in a single proceeding, and the School District made a final written offer both before filing its petition in condemnation to acquire Parcel A and before amending its petition in condemnation to acquire both Parcel A and Parcel B. Four days before it filed its petition in condemnation to acquire Parcel A, the School District made a final offer to purchase Parcel A for $3,250,000. Almost one month before it amended its petition in condemnation to acquire both Parcel A and Parcel B, the School District made a final offer to purchase both Parcel A and Parcel B for $6,564,492. Unlike the second written offer in *Kortum Investment*, which was made three days *after* the highway authority amended its petition in condemnation, the second written offer in this case was made almost one month before the School District amended its petition in condemnation.

Section 38–1–122(1.5) defines the "last written offer" as the "offer given to the property owner prior to the filing of the condemnation action." Given that this case involves two distinct and separable condemnations that were tried in a single proceeding, we conclude that section 38–1–122(1.5) contemplates the trial court's application of each written offer to the corresponding condemnation scenario. In the first scenario, the condemnation action occurred when the original petition was filed on January 16, 2004, four days after the School District's last written offer of $3,250,000 on January 12, 2004. The value of Parcel A and the value of the damages to Parcel B as determined by the jury, $7,619,240, exceeds 130 percent of the School District's last written offer of $3,250,000. In the second scenario, the condemnation action occurred when the petition was amended to include both parcels on June 15, 2004, following the last written offer of $6,564,492 for both parcels on May 18, 2004. The amount of compensation owed by the School District to Security Life for the condemnation of all 138 acres, as confirmed by the trial court to be $9,274,520, exceeds 130 percent of the School District's last written offer of $6,564,492.

Hence, we hold that Security Life is entitled to attorney fees under section 38–1–122(1.5). Security Life requests attorney fees incurred on appeal and states section 38–1–122(1.5) as its legal basis for such fees. We direct the trial court to determine whether Security Life is entitled to attorney fees incurred on appeal and, if so, to determine the reasonable amount of those fees.

## IV. Conclusion

We reverse the court of appeals' judgment and remand this case to that court to be returned to the trial court with directions to enter judgment pursuant to the trial court's order which requires the School District to pay Security Life $9,274,520 for the condemnation of all 138 acres.

Justice HOBBS dissents, Justice RICE and Justice COATS join in the dissent.

Justice HOBBS, dissenting.

I respectfully dissent. In my view, the majority erroneously approves a trial court change in substance to the jury verdict that deprives the School District of $2,000,000, plus substantial attorney fees, without a fair trial on the valuation of the entire condemned property.

The majority's analysis and judgment stem directly from the mischaracterization of this case as two condemnation actions. The case was actually tried, upon agreement of both parties, as one condemnation action with two condemnation scenarios. Under the first scenario, the School District would take only part of the property; under the second scenario, the School District would take the entire property. Ultimately, the School District chose to take the entire property and has built a middle school, high school, and sports field on it.

I would hold that the trial court abused its discretion by changing the substance of an inconsistent jury verdict resulting from a verdict form and jury instructions that confused and misled the jury. In my view, the appropriate remedy is to remand for a new valuation trial regarding the entire property.

## 1. The Trial Court Impermissibly Amended the Verdict

The School District and Security Life both agreed to the unusual manner in which the case was tried, as well as to the jury instructions and verdict form. Using a stock verdict form and instructions they attempted, unsuccessfully, to adapt them to the two alternative scenarios: (1) taking Parcel A and not taking Parcel B but damaging it, or (2) taking the entire property. The verdict form to which the parties agreed irreconcilably confused the jury by introducing the concept of interim damaged property based on the dates of possession of Parcel A and Parcel B, a concept that does not exist under Colorado law.

The verdict form the jury completed reads as follows:

We, the jury, ascertain and assess:

(1) Parcel A is described on Exhibit A attached hereto.

(2) The value of Parcel A, which is actually taken, on February 19, 2004, was *$5,619,-240.00.*

(3) The damages to the residue of such property, or Parcel B, if not actually taken, are *$2,000,000.00.*

(4) Parcel B is described on Exhibit B attached hereto.

(5) The value of Parcel B on February 7, 2005, if actually taken is *$1,655,280.00.*

The verdict's inconsistency is facially apparent because the jury awarded more money for damaging Parcel B than it did for condemning Parcel B outright. To rectify the jury's inconsistent verdict, the trial court made a calculation that the verdict form does not call for. It impermissibly added together the monetary amounts the jury inserted into the second and third blank lines of the verdict form to reach the value of Parcel B if the School District chose to take the entire property.

However, the verdict form specifically requires the jury to state the value of Parcel B in the third blank line of the verdict form. The trial court's impermissible intervention in amending the jury's completed verdict form highlights the confusion the jury instructions and verdict form engendered. To avoid this confusion, something comparable to the following language should have been included on the verdict form following the third blank:

(THE AMOUNT OF MONEY TO BE INSERTED INTO THIS BLANK LINE IS THE ACTUAL VALUE YOU DETERMINE FOR PARCEL B AS OF FEBRUARY 7, 2005 WITHOUT ANY CONSIDERATION OF DAMAGES, BECAUSE NO DAMAGES WILL HAVE OCCURRED IF THE SCHOOL DISTRICT TAKES BOTH PARCELS A AND B)

In the absence of such an explanation, the jury instructions together with the verdict form confused and misled the jury. Jury Instruction No. 11 stated, "[The School District] may decide to acquire Parcel B, in which case, there will be no residue" and "you are to determine the amount of compensable damages, if any, to Parcel B, in the event Parcel B is not acquired by [the School

District]." The obvious error with this jury instruction, as well as with the other instructions, is that they do not clarify, in light of the alternative scenarios, that no damages occur if the School District chooses to also acquire Parcel B.

In its statement of different possession dates for Parcels A and B, Jury Instruction No. 2 also added to jury confusion by implanting the concept of interim damaged property, a legal concept that does not exist in Colorado condemnation law. The unusual manner in which the parties agreed to try the case—including the verdict form and jury instructions as written and agreed to—prompted the trial court to alter the jury's verdict in a substantive way and implicitly accepted the nonexistent legal concept of interim damaged property. The trial court stated:

> The only fair and logical reading of the verdict is that the jury found that, as of the taking on February 19, 2004, the value of the property taken ("A") was $5,619,240 *and the damages to the remainder ("B") was $2,000,000. Subsequently, as of February 7, 2005, and after the $2,000,000 had been paid,* if the School District wished to purchase parcel "B", the value of that would be an additional $1,655,280, for a total of $9,274,520.

(Emphasis added).

In addition, the court of appeals was so confounded when examining the verdict form and jury instructions that it explicitly recognized the nonexistent legal concept of interim damages. However, both parties conceded in their briefs and at oral argument before us that no such concept exists in Colorado condemnation law.

In my view, the trial court amended the jury's verdict improperly. It did so because it recognized that the jury should have stated in one figure—on the third blank line—the total value of Parcel B in the scenario of the School District taking the entire property. However, because the jury inserted a relatively low monetary figure as the value of Parcel B, $1,655,280, the trial court conjectured that the jury had broken the total value of Parcel B into two figures. It then made a calculation that the jury did not make, adding $2,000,000 to the amount the jury had stated as being the value of Parcel B.

In making a calculation the jury did not make, the trial court engaged in speculation about the jury's intent and made an impermissible change in substance to the jury's verdict. When there are misleading instructions, confusing verdict forms, or conflicting answers in the jury's completed verdict form, neither a trial court nor an appellate court should attempt to correct the jury verdict. *See Boulder Valley Sch. Dist. R–2 v. Price,* 805 P.2d 1085, 1093–94, (Colo.1991), *rev'd on other grounds by Cmty. Hosp. v. Fail,* 969 P.2d 667, 670 (Colo.1998).

## 2. A New Valuation Trial of the Entire Property Should Occur

In my view, the appropriate remedy in this case is a new trial for valuation of the entire property. Our seminal case on whether it is permissible to grant a partial retrial instructs us that "it should *clearly* appear that the issue to be retried is entirely distinct and separable." *See Bassett v. O'Dell,* 178 Colo. 425, 427, 498 P.2d 1134, 1135 (1972) (emphasis added). A partial retrial is possible only if retrying part, but not all, of the issues will not result in an injustice to either party. *Gerrity Oil & Gas Corp. v. Magness,* 946 P.2d 913, 934 (Colo.1997).

Because the dispute in this case surrounds the valuation of the entire property, an examination of whether a partial or entire retrial is appropriate turns on the valuation method used by the parties at trial and the fairness of only retrying the value of Parcel B as ordered by the court of appeals.

At trial, the School District and Security Life's experts used the same comparable sales valuation methodology but disputed each other's valuation adjustments. In addition, each party's experts approached the valuation differently given the various condemnation scenarios presented to the jury. The original trial was a single condemnation action for one piece of contiguous and similarly zoned property owned by Security Life, not two separate condemnation actions. *See* Jury Instruction No. 2 ("The property that the [School District] seeks to acquire is approximately 138 acres.... The [School Dis-

trict] seeks to acquire the property in two parcels."). Thus, at the end of the first trial, the School District was entitled, if it so chose, to take the entire property or only Parcel A.

Despite the two condemnation scenarios, the parties agreed to conduct only one valuation trial and provided jury instructions and a verdict form with the intent of arriving at a fair value for the entire property. Under a retrial of Parcel B, as the court of appeals ordered, the second jury would be prohibited from receiving and making a determination on all the relevant interrelated valuation evidence regarding the property as a whole. Thus, in my view, a retrial on the valuation of the entire property should occur.

### 3. The Attorney Fee Award Improperly Turns on the Invalid Concept of Interim Damaged Property

I also dissent from the majority's attorney fee decision. By adding $2,000,000 in damages to the School District's possession of Parcel A, the majority's decision erroneously results in an award of attorney fees to Security Life. However, under the facts of this case, damages to the property never occurred because the School District condemned the entire property. Thus, in my view, the majority's decision incorrectly inserts the nonexistent legal concept of interim damages into an attorney fee calculation. Under the unique circumstances of this case, where a single condemnation was tried by agreement of the parties in two different scenarios, the court should not approve an attorney fee award.

In sum, I would reverse the judgment of the court of appeals and order it to return this case for a new valuation trial regarding the entire property the School District took in this case.

Accordingly, I respectfully dissent.

I am authorized to state that Justice RICE and Justice COATS join in this dissent.